# 22-1240

## United States Court of Appeals
## for the Second Circuit

ELIZABETH STAFFORD,
*Petitioner-Appellee,*

— v. —

INTERNATIONAL BUSINESS MACHINES CORP.,
*Respondent-Appellant.*

On Appeal from the United States District Court for the
Southern District of New York
No. 21-CV-06164 – Judge J. Paul Oetken

## RESPONDENT-APPELLANT INTERNATIONAL BUSINESS MACHINES CORP.'S OPENING BRIEF

Anthony J. Dick
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Telephone: (202) 879-3939
ajdick@jonesday.com

Matthew W. Lampe
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
mwlampe@jonesday.com

J. Benjamin Aguiñaga
JONES DAY
2727 N. Harwood St., Ste. 500
Dallas, TX 75201
Telephone: (214) 220-3939
jbaguinaga@jonesday.com

*Counsel for Respondent-Appellant IBM*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Respondent-Appellant International Business Machines Corporation states that it has no parent corporation, and there is no publicly held corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT............................................i

TABLE OF AUTHORITIES....................................................iii

JURISDICTIONAL STATEMENT............................................. 1

STATEMENT OF THE ISSUES............................................... 2

STATEMENT REGARDING ORAL ARGUMENT................................. 2

INTRODUCTION ......................................................... 3

STATEMENT OF THE CASE ................................................ 6

SUMMARY OF ARGUMENT ............................................... 13

STANDARD OF REVIEW.................................................. 15

ARGUMENT............................................................. 15

I.   This Court Should Vacate The District Court's Judgment
     For Lack Of Subject-Matter Jurisdiction ......................... 15

     A.   The District Court Lacked Article III Jurisdiction .................. 16

          1.   There Is No Article III Case or Controversy
               Where a Monetary Arbitration Award Already
               Has Been Satisfied.............................................. 16

          2.   This Article III problem did not arise in *Zeiler* ................ 24

     B.   The District Court Lacked Statutory Jurisdiction.................... 29

II.  This Court Should Reverse The Unsealing Order .......................... 31

     A.   The Final Award Is Not a Judicial Document Subject
          to the Presumption of Public Access......................... 34

     B.   Even If the Final Award Were a Judicial Document,
          the Presumption of Public Access Would be Weak
          and Easily Overcome ................................................ 38

CONCLUSION ......................................................... 42

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ............................................................ 6, 40

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ................................................................. 40

*Badgerow v. Walters*,
142 S. Ct. 1310 (2022) ........................................ 4, 13, 29, 30

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
814 F.3d 132 (2d Cir. 2016) .................................................. 15

*Brown & Pipkins, LLC v. Serv. Emps. Int'l Union*,
846 F.3d 716 (4th Cir. 2017) ................................... 18, 19, 22

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019) ...................................... 32, 35, 36

*Chandler v. Int'l Bus. Machs. Corp.*,
No. 21-cv-6319, 2022 WL 2473340
(S.D.N.Y. July 6, 2022) ............................................................ 9

*Clearwater Ins. Co. v. Granite State Ins. Co.*,
No. 15-cv-165, 2015 WL 500184
(S.D.N.Y. Feb. 5, 2015) ........................................... 36, 37, 38

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985) ................................................................. 40

*Dhinsa v. Krueger*,
917 F.3d 70 (2d Cir. 2019) ..................................................... 16

*Doscher v. Sea Port Grp. Sec., LLC*,
832 F.3d 372 (2d Cir. 2016) ................................................... 29

*Florasynth, Inc. v. Pickholz*,
750 F.2d 171 (2d Cir. 1984) ........................................... 35, 38

*Fox v. Bd. of Trs. of State Univ. of N.Y.*,
42 F.3d 135 (2d Cir. 1994) ...................................... 16, 17, 24

iii

*Green v. Dep't of Educ. of City of N.Y.*,
16 F.4th 1070 (2d Cir. 2021) ................................................. 26

*Guyden v. Aetna, Inc.*,
544 F.3d 376 (2d Cir. 2008) ...................................... 3, 5, 40

*In re: IBM Arb. Agreement Litig.*,
No. 21-cv-6296, 2022 WL 3043220
(S.D.N.Y. Aug. 2, 2022) ..................................................... 39, 42

*Iron Arrow Honor Soc'y v. Heckler*,
464 U.S. 67 (1983) .............................................................. 16

*Lewis v. Casey*,
518 U.S. 343 (1996) ............................................................ 26

*Lodi v. Int'l Bus. Machs. Corp.*,
No. 21-cv-6336, 2022 WL 2669199
(S.D.N.Y. July 11, 2022) ...................................................... 9

*Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006) ...................................... *passim*

*Martin-Trigona v. Shiff*,
702 F.2d 380 (2d Cir. 1983) .............................................. 17

*NLRB v. Constellium Rolled Prods. Ravenswood, LLC*,
43 F.4th 395 (4th Cir. 2022) ............................................. 17

*P.R. Tel. Co. v. WorldNet Telecomms., LLC*,
No. 21-mc-386, 2022 WL 255362
(D.P.R. Jan. 27, 2022) ...................................... 18, 22, 23, 24

*Palmieri v. Allstate Ins. Co.*,
445 F.3d 179 (2d Cir. 2006) .............................................. 15

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .............................................................. 26

*Susquehanna Int'l Grp. Ltd. v. Hibernia Express (Ir.) Ltd.*,
No. 21 Civ 207, 2021 WL 3540221
(S.D.N.Y. Aug. 11, 2021) .............................................. 36, 37

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Tavenner v. Int'l Bus. Machs. Corp.*,
    No. 21-cv-6345, 2022 WL 4449215
    (S.D.N.Y. Sept. 23, 2022) .................................................... 9

*Teamsters Loc. 177 v. United Parcel Serv.*,
    966 F.3d 245 (3d Cir. 2020) ...................................... *passim*

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ........................................................ 17

*Unite Here Loc. 1 v. Hyatt Corp.*,
    862 F.3d 588 (7th Cir. 2017) ............................ 19, 20, 22, 27

*United Food & Com. Workers Union, Loc. 919, AFL-CIO*
    *v. CenterMark Props. Meriden Square, Inc.*,
    30 F.3d 298 (2d Cir. 1994) .................................................. 24

*United State v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995) ...................................... *passim*

*United States v. Amodeo*,
    44 F.3d 141 (2d Cir. 1995) .................................................. 32

*Zeiler v. Deitsch*,
    500 F.3d 157 (2d Cir. 2007) ...................................... *passim*

CONSTITUTIONAL AND STATUTORY AUTHORITIES

U.S. Const. art. III ........................................................ *passim*

9 U.S.C. § 9 ............................................................ 1, 24, 35, 37

9 U.S.C. § 10 .................................................................... 35, 37

9 U.S.C. § 11 .................................................................... 35, 37

28 U.S.C. § 1291 ...................................................................... 1

28 U.S.C. § 1331 .............................................................. 15, 29

28 U.S.C. § 1332 ........................................................ 2, 15, 29

# JURISDICTIONAL STATEMENT

Petitioner-Appellee Elizabeth Stafford initiated this case by filing a petition to confirm an arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. JA36–39. As alleged in Stafford's petition, the award adjudicated her claim of "age discrimination in violation of the Age Discrimination in Employment Act [('ADEA')]." JA36. The district court entered its opinion and order granting Stafford's petition and ordering unsealing of the award on May 10, 2022. JA64–71. The district court clarified its order on May 25, 2022. JA72–73. Respondent-Appellant International Business Machines Corp. ("IBM") timely filed its notice of appeal of that order on June 6, 2022. JA74. This Court has jurisdiction under 28 U.S.C. § 1291—but the district court lacked both Article III jurisdiction and statutory subject-matter jurisdiction, *see infra* Argument Section I.

## STATEMENT OF THE ISSUES

1. Whether the district court lacked (a) Article III jurisdiction due to the lack of any live case or controversy given that IBM already had fully complied with the arbitration award, and (b) diversity jurisdiction under 28 U.S.C. § 1332 given that there is no amount in controversy.

2. Whether the district court erred in holding that the private and confidential arbitration award is a judicial document subject to the presumption of public access and must be unsealed.

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents two issues of first impression in this Court: (1) whether there is a live case or controversy that supports jurisdiction for a federal district court to confirm a monetary arbitral award, where the award had already been fully paid and satisfied prior to the confirmation order; and (2) whether a federal district court must unseal a confidential arbitral award simply because the winning party moved to confirm it. Given the importance of these questions, IBM respectfully submits that oral argument would aid the Court in its decision-making process.

# INTRODUCTION

As this Court has recognized, "confidentiality is a paradigmatic aspect of arbitration." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 385 (2d Cir. 2008). And so it was in the underlying arbitration in this case. Elizabeth Stafford—a former IBM employee—agreed to confidential arbitration with IBM. Stafford subsequently filed an arbitration demand, the parties arbitrated, and Stafford received a monetary award. All of the underlying proceedings and the final award are confidential under the plain terms of the arbitration agreement. Immediately following the arbitration, IBM began processing payment—and it fully satisfied the award. None of this is disputed.

Stafford, however, petitioned the district court to confirm the award under the Federal Arbitration Act ("FAA") and simultaneously asked the court to unseal the award "so that the public may access it." JA37. Stafford's stated purpose for the unsealing request was to pursue her strategic objective (or more specifically, her *counsel's* strategic objective) to override Stafford's confidentiality agreement by sharing the award with "other employees" (represented by the same counsel) who were pursuing separate claims in their own individual arbitrations against

IBM. JA37 n.1. IBM did not oppose confirmation of the award, and instead paid it in full. The district court then confirmed the award and, despite the clear confidentiality terms in the arbitration agreement, ordered that the award be unsealed—subject to a stay pending appeal.

The district court's judgment should be vacated because the court lacked jurisdiction to adjudicate Stafford's petition. Under Article III of the U.S. Constitution, the judicial power extends only to live cases or controversies. But there is no case or controversy here. At the time of the court's confirmation decision IBM had already fully satisfied the monetary award by paying Stafford the required amount, leaving nothing else to be done to comply with the award and rendering confirmation pointless. The case is accordingly moot, and the judgment below should be vacated and remanded with instructions to dismiss the petition.

Relatedly, the district court's judgment should also be vacated because the court lacked statutory subject-matter jurisdiction after *Badgerow v. Walters*, 142 S. Ct. 1310 (2022). The court had no federal-question jurisdiction under *Badegrow* because Stafford's petition itself does not raise a federal question. *Id.* at 1314. And while the parties are diverse, the petition failed to allege any amount in controversy to support

diversity jurisdiction. The judgment below should thus be vacated for lack of jurisdiction.

Finally, if the Court reaches the merits, it should reverse the district court's unsealing order. Under this Court's cases, the final award is not a "judicial document" subject to the presumption of public access because its contents did not—and could not—influence the district court's confirmation of the award. And even if that were not so, any presumption of public access would be exceedingly weak given that the contents of the final award played no role in the district court's confirmation decision.

Any presumption of public access here would be easily overcome by the FAA's strong policy in favor of confidential arbitration. Indeed, it cannot be that every confirmation proceeding under the FAA allows the winning party to eviscerate a binding arbitral confidentiality agreement and demand public disclosure of the confidential award. This Court has recognized that an attack on arbitral confidentiality "is, in part, an attack on the character of arbitration itself," *Guyden*, 544 F.3d at 385. Accordingly, allowing arbitral confidentiality to be so easily vitiated would contradict the FAA's requirement that arbitration agreements

must be upheld and "'rigorously enforce[d]' . . . according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).

The judgment below cannot stand.

## STATEMENT OF THE CASE

**1.** This case arises out of Stafford's former employment at IBM. In June 2018, Stafford and IBM signed a separation agreement that gave her substantial "payments and benefits" that she "otherwise would not have been entitled to receive" upon her departure. JA27. That separation agreement contained an Arbitration Agreement, which required all covered disputes between Stafford and IBM to be resolved through confidential arbitration. JA23, ¶ 8; JA28. In particular, the Agreement expressly provides that "the parties shall maintain the confidential nature of the arbitration proceeding *and the award*." JA32 (emphasis added). IBM gave Stafford 30 days to review the Agreement before signing it, and explicitly advised her to consult with counsel first. JA28–29.

In January 2019, Stafford filed an arbitration demand asserting claims against IBM. JA24, ¶ 9. On July 12, 2021, the Arbitrator issued a Final Award in Stafford's favor. JA24, ¶ 12. The Final Award contains

extensive discussion of non-public confidential information about IBM and its employees—precisely the type of information that the confidentiality agreement was designed to protect.

On July 30, 2021, in accordance with the arbitral rules, IBM filed a motion for reconsideration of the Final Award regarding the calculation of interest owed. JA62, ¶ 5. On August 31, 2021, the Arbitrator resolved the reconsideration motion and the award became fully finalized. JA63, ¶ 6. "Subsequent to [that] ruling, IBM began processing payment of all amounts owed to Stafford and her counsel under the final award." JA63, ¶ 7. On September 17, 2021—17 days after the Arbitrator issued the decision resolving the reconsideration motion and confirming the amounts provided for in the Final Award—IBM mailed the payments to Stafford and her counsel. JA63, ¶ 8. "IBM has no further obligations under the final award." JA63, ¶ 9.

**2.** Even though IBM immediately began preparing to pay the award in full after the award was issued—and never provided any reason to doubt its voluntary compliance—Stafford filed a petition to confirm the Final Award under the FAA and an accompanying motion requesting

unsealing of the award on September 3, 2021. JA22–25, JA36–39.[1] Stafford attached a copy of the Final Award to both the petition and the motion. Dist. Ct. ECF Nos. 13-1, 14-1.

Acknowledging her confidentiality obligations under the Arbitration Agreement, she initially moved the district court to file the Final Award under seal, which the district court did. *See* JA06–07; Dist. Ct. ECF No. 6; *see also* JA37. But she also asked the district court to "exercise its inherent authority to unseal this award so that the public may access it." JA37. In a footnote, she complained that the arbitral confidentiality provision "prevent[s]" other former IBM employees involved in separate arbitrations—and represented by her counsel—from "sharing" confidential information obtained in each proceeding with one another. JA37 n.1.[2]

---

[1] Stafford originally attached an incomplete version of her Arbitration Agreement to her filings. *See* Dist. Ct. ECF Nos. 1, 5. She then filed a corrected petition and motion to confirm, with a complete version of her Arbitration Agreement, which IBM cites here.

[2] In the same footnote, Stafford broadly claimed—citing out-of-state case law—that "[a] number of courts have found such confidentiality provisions in arbitration agreements to be unconscionable." JA37 n.1. But Stafford's petition does not raise an unconscionability claim. And in fact, Judge Koeltl has since issued two decisions—in cases filed by Stafford's counsel—squarely holding that the same arbitral

8

IBM did not oppose confirmation of the Final Award. To the contrary, IBM's partial opposition emphasized IBM already had "fully complied" with the Final Award by paying the amount required, leaving "no further obligations" for IBM. JA48; JA63, ¶ 9.

IBM did, however, oppose the unsealing of the Final Award. As relevant here, IBM principally argued that "the Final Award is not a judicial document that is subject to the presumption of public access." JA54. Judicial documents "are only those that are 'relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)). But the contents of the Final Award were "completely irrelevant to the judicial task of confirmation" given that IBM was not

confidentiality provision is fully enforceable and is not unconscionable under New York law. *See Chandler v. Int'l Bus. Machs. Corp.*, No. 21-cv-6319, 2022 WL 2473340, at *7–8 (S.D.N.Y. July 6, 2022), *appeal pending* No. 22-1733 (2d Cir.); *Lodi v. Int'l Bus. Machs. Corp.*, No. 21-cv-6336, 2022 WL 2669199, at *5 (S.D.N.Y. July 11, 2022), *appeal pending* No. 22-1737 (2d Cir.); *see also Tavenner v. Int'l Bus. Machs. Corp.*, No. 21-cv-6345, 2022 WL 4449215 (S.D.N.Y. Sept. 23, 2022) (Karas, J.) (stating in a separate case filed by Stafford's counsel that the court "would find no fault in the reasoning articulated in the *Chandler* decision and would thus adopt the conclusion that 'the Confidentiality Provision is neither procedurally unconscionable nor substantively unconscionable under New York law'"), *appeal pending* No. 22-2318 (2d Cir.).

opposing confirmation or alleging any defect in the award. *Id.* Given that IBM fully complied with the Final Award—and did not oppose its confirmation—there was nothing left for the district court to do except confirm the award regardless of its contents, assuming, of course, that the district court had jurisdiction to do even that, which IBM disputes. Thus, "[m]aking the award public would do nothing to promote 'confidence in the administration of justice.'" JA55 (quoting *United State v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*")).

IBM also argued that, even if the Final Award were a judicial document, the presumption of public access would be overcome. To start, the presumption "would be exceedingly weak" because "the contents of the award could 'play only a negligible role in the performance of Article III duties.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1050). Moreover, the FAA's vigorous protection of arbitral confidentiality would outweigh any negligible public interest in seeing the contents of a private confidential arbitration award whose confirmability was never in question. Indeed, "if every court confirmation process allowed the winning party to demand the disclosure of the arbitral award, then the 'liberal federal policy' of protecting arbitral confidentiality would be eviscerated." JA59.

**3.** On May 10, 2022, the district court confirmed the Final Award and ordered that it be unsealed with limited redactions. JA70. The district court acknowledged IBM's argument that the Final Award is not a judicial document subject to the presumption of public access because "the Court does not need to consult the contents of the Final Award in [order] to confirm it." JA68. The district court summarily dismissed that argument, however, on the ground that "[t]his argument has been previously raised by parties and has been rejected by several courts in this District." *Id.* (citing cases). The district court likewise acknowledged IBM's argument under the FAA that "allowing unsealing would violate the strong federal policy in favor of protecting arbitral confidentiality." JA69. But the district court never specifically explained its rejection of that argument. Instead, the district court said only that "IBM has failed to identify factors that overcome the strong presumption of public access and weigh in favor of sealing the entire Final Award." *Id.*

Notwithstanding its unsealing order, the district court recognized "the unique circumstances of this case—where the parties explicitly agreed to maintain the confidentiality of the arbitration proceedings, the Final Award is unopposed *and* has been fully satisfied, and IBM provided

some reasons to maintain the sealing." JA70. For that reason, the district court stayed its unsealing order pending this appeal. *Id.* Though not material to this appeal, the district court subsequently clarified its instructions in an order dated May 25, 2022. JA72–73.

## SUMMARY OF ARGUMENT

**I.** The decision below should be vacated because the district court lacked both Article III and statutory jurisdiction.

**A.** The district court lacked Article III jurisdiction to confirm the arbitral award because the award provided for nothing more than the purely retrospective remedy of payment, and IBM had already fully paid the award before the time of confirmation. As a result, the case had become moot as there was no live "case or controversy" to support the court's jurisdiction.

**B.** The district court also lacked statutory subject-matter jurisdiction because it had neither federal-question jurisdiction nor diversity jurisdiction. In *Badgerow v. Walters*, 142 S. Ct. 1310 (2022), the Supreme Court held that federal-question jurisdiction does not lie to confirm an arbitration award based on an underlying federal claim. As a result, the only possible basis for jurisdiction here is diversity. But there is no diversity jurisdiction here because, although the parties are diverse, the petition does not allege any amount in controversy. Nor could it, as there was never any controversy over IBM's obligation to pay the award in full, which IBM promptly did.

**II.** Even if the district court had jurisdiction, the order requiring unsealing of the confidential arbitration award should be reversed.

**A.** There is no presumption of public access here because the confidential arbitration award is not a "judicial document." Judicial documents are limited to those that have a reasonable tendency to influence a court's exercise of Article III power. Here, however, because the confirmation petition was unopposed, the contents of the arbitration award had no reasonable tendency to influence the court's ruling. The Federal Arbitration Act provides that an arbitration award must be confirmed in summary fashion unless a party applies to vacate or modify it. But here no party did so, and thus the contents of the award were not at issue.

**B.** Even if the presumption of public access applied, it would be weak in this case and easily overcome by the strong federal interest in upholding arbitral confidentiality. This Court has recognized that confidentiality is a fundamental aspect of arbitration protected by federal law. But allowing any party to disclose the contents of a confidential arbitration award just by seeking confirmation or vacatur would eviscerate that important federal protection.

## STANDARD OF REVIEW

This Court "review[s] *de novo* the question of whether subject-matter jurisdiction exists." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 184 (2d Cir. 2006). "In reviewing a district court's order to seal or unseal, [this Court] examine[s] the court's factual findings for clear error, its legal determinations *de novo*, and its ultimate decision to seal or unseal for abuse of discretion." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016).

## ARGUMENT

### I.   This Court Should Vacate The District Court's Judgment For Lack Of Subject-Matter Jurisdiction.

The decision below should be vacated because the district court lacked jurisdiction for two reasons. First, the court lacked Article III jurisdiction because the case was moot, as IBM had already fully paid and satisfied the award before the time of confirmation. And second, there is no valid ground of statutory  jurisdiction: the confirmation petition does not raise any federal question under § 1331, and the amount-in-controversy requirement is not met to support diversity jurisdiction under § 1332.

**A.    The District Court Lacked Article III Jurisdiction.**

The Court should vacate the judgment and remand with instructions to dismiss Stafford's petition as moot due to the lack of any live case or controversy. IBM has fully complied with—and never opposed—the Final Award. The district court accordingly should have dismissed Stafford's petition for lack of Article III jurisdiction, and this Court should vacate and remand with instructions to do so.

**1.    There Is No Article III Case or Controversy Where a Monetary Arbitration Award Already Has Been Satisfied.**

As this Court has often recognized, "Article III of the Constitution limits the federal courts' power to the resolution of 'Cases' and 'Controversies.'" *E.g.*, *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019) (quoting U.S. Const. art. III, § 2).  A logical corollary is that "[f]ederal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983); *see also Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 n.2 (2d Cir. 1994) ("[T]he mootness doctrine is based upon the case or controversy requirement of Article III of the Constitution.").

"When a case becomes moot, the federal courts 'lack[] subject matter jurisdiction over the action.'" *Fox*, 42 F.3d at 140. And "[t]he hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983). That is precisely the case where a monetary award has been fully satisfied before the court rules on confirmation.

**a.** Article III's case-or-controversy requirement applies with full force when a petitioner invokes the FAA's confirmation procedures. Congress's creation of those procedures cannot create Article III jurisdiction. The Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021); *see also, e.g.*, *NLRB v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 399 (4th Cir. 2022) ("Congress cannot extend the judicial power to matters that are neither cases nor controversies."). Consequently, although "the FAA clearly states that a court 'must grant' a timely request for [confirmation of] an arbitration award," that language "does not supersede the 'irreducible constitutional

minimum of [an Article III case or controversy].'" *P.R. Tel. Co. v. WorldNet Telecomms., LLC*, No. 21-mc-386, 2022 WL 255362 (D.P.R. Jan. 27, 2022).

As many federal courts have recognized when addressing petitions to confirm arbitration awards, the existence of an Article III case or controversy depends on whether the requested judicial relief would be "effectual." *Brown & Pipkins, LLC v. Serv. Emps. Int'l Union*, 846 F.3d 716, 729 (4th Cir. 2017). For example, in *Brown & Pipkins*, an arbitrator issued a "Monies Owed Award" that required the company to make payments to satisfy the award. *Id.* at 728. The district court confirmed the award. *Id.* On appeal, the company argued that "the dispute underlying the Monies Owed Award is moot, and therefore confirmation is improper," because the company had made all of the required payments. *Id.*

The Fourth Circuit agreed with the general proposition that a case is moot if a court cannot "grant any effectual relief whatever to the prevailing party." *Id.* (emphasis omitted). But the Fourth Circuit rejected the company's mootness argument because the prevailing party in the arbitration "refuse[d] to concede that [the company] made the payments

it claims to have made." *Id.* The fact that neither "[t]he arbitrator" nor the district court "found that [the company] complied with the Monies Owed Award"—together with the prevailing party's "insistence that a controversy still exists"—"convince[d] [the Court] that it is not impossible to grant any effectual relief by affirming the confirmation of the Monies Owed Award." *Id.* at 729. "[C]onfirmation of the Monies Owed Award [was] proper," therefore, "because a live controversy regarding the award exist[ed]." *Id.*

The Seventh Circuit made a similar point in *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588 (7th Cir. 2017). There, the arbitrators awarded "open-ended prospective relief" against Hyatt—"as opposed to backward-looking make-whole relief"—by instructing Hyatt to cease and desist from further violating a collective bargaining agreement. *Id.* at 596. Hyatt did not challenge the awards and, to the contrary, "purport[ed] to accept [them] as valid and binding upon itself." *Id.* at 598. For that reason, after the district court confirmed the awards, Hyatt argued on appeal that there was "no Article III case or controversy for a court to resolve." *Id.*

The Seventh Circuit rejected Hyatt's argument because the awards provided *prospective* relief requiring the company to take certain actions, and confirmation made that relief "judicially enforceable by way of contempt sanctions." *Id.* Confirmation thus gave "teeth" to the awards, which was a valuable benefit to the petitioner because there was some question whether Hyatt was "in fact acting in compliance with the awards." *Id.* at 598–99. Accordingly, the Seventh Circuit held that the petitioner's pursuit of confirmation to obtain the benefit of judicial enforceability of prospective relief presented "a live case or controversy between the parties." *Id.* at 599–600.

Finally, in *Teamsters Local 177 v. United Parcel Service*, 966 F.3d 245 (3d Cir. 2020), the Third Circuit likewise emphasized that a live case or controversy existed because the petition sought confirmation of an arbitration award that provided prospective relief. Similar to the facts in *Unite Here*, the arbitrator in *Teamsters Local 177* issued an award against UPS ordering the company to cease and desist from further violating a collective bargaining agreement. *Id.* at 249. Shortly thereafter, UPS violated that order, leading the union to file a petition seeking to confirm the award under the FAA "in light of UPS's repeated

violations and to preserve its rights in case of future violations." *Id.* at 250. UPS resisted confirmation in the district court and in the Third Circuit on the ground that "no case or controversy existed, as there were no ongoing violations." *Id.*

Like the Seventh Circuit, the Third Circuit rejected that argument because of the benefits that confirmation could yield to the prevailing union in enforcing the prospective relief provided by the award. Without confirmation, "the parties would essentially have to relitigate the case via a suit to enforce the arbitration award" against future violations; but with confirmation, a court "can penalize the non-complying party through contempt proceedings or the issuance of injunctive relief." *Id.* at 253. For that reason, a prevailing party seeking to confirm an arbitration award granting prospective relief has "a live stake in the proceeding, and thus it has standing to seek confirmation." *Id.* But significantly, the Third Circuit recognized that the result might be different where an arbitrator issues only a monetary award, not prospective relief, and that award has been fully satisfied: "We limit our holding to an award for equitable relief and express no opinion as to whether a party that receives an arbitration

award for money damages has standing to confirm the award in federal court after those damages are paid in full." *Id.* at 253 n.3.

**b.** In the present case, unlike in the cases above, there is no live Article III case or controversy because Stafford seeks to confirm a purely retrospective monetary arbitration award that has already been fully satisfied. The essential facts from *Brown & Pipkins* are not present: The district court *did* determine—and Stafford has *never* "refuse[d] to concede"—that IBM fully "complied with" the Final Award. 846 F.3d at 728–29; *see also* JA65. And the essential reasoning from *Unite Here* and *Teamsters Local 177* regarding the enforcement of *prospective equitable relief* is inapposite: Because IBM has fully satisfied the Final Award— and because the Final Award granted Stafford only *retrospective monetary relief*—there is no work for contempt sanctions or injunctive relief to do. In other words, this is a case where it is "impossible to grant any effectual relief by affirming the confirmation of the [Final] Award." *Brown & Pipkins*, 846 F.3d at 729.

Indeed, that is the conclusion a district court applying *Teamsters Local 177* reached in a virtually identical case. In *Puerto Rico Telephone Company*—as here—the arbitrator issued a final award ordering the

company "to pay a specific sum of money" to WorldNet. 2022 WL 255362, at *1. There—as here—"[t]he parties agree[d] [the company] has paid the full amount awarded." *Id.* And there—as here—the parties "also agree[d] that the Final Award is final and binding on the parties." *Id.* When WorldNet petitioned the district court to confirm the award under the FAA, therefore, the company "argu[ed] [that] there is no 'case' or 'controversy' before the Court." *Id.*

The district court agreed with the company, reasoning that, "[i]n the absence of a 'case' or 'controversy,' this Court cannot confirm the Final Award." *Id.* at *2. Framing the issue in terms of Article III standing, the district court emphasized that WorldNet faced no actual or imminent injury because the company "fully complied with its obligations under the Final Award." *Id.* And that critical fact, the district court observed, "stand[s] in contrast to the body of caselaw involving confirmation of arbitration awards for *equitable* relief, in which the justiciability issue is admittedly more nuanced than the case at bar." *Id.* (emphasis added) (citing *Teamsters Loc. 177*, 966 F.3d at 253 n.3). True, the district court recognized, "the FAA clearly states that a court 'must grant' a timely request for [confirmation of] an arbitration award." *Id.*

(quoting 9 U.S.C. § 9). But "such language does not supersede the 'irreducible constitutional minimum of standing.'" *Id.* And the Supreme Court has never "instruct[ed] district courts to ignore foundational constitutional principles when reviewing petitions for confirmation." *Id.*

The same is true here. There is no dispute that IBM has fully complied with the Final Award. There is no prospective equitable relief at issue. The upshot is that there is no Article III case or controversy. Vacatur and remand for dismissal are warranted.[3]

### 2. This Article III problem did not arise in *Zeiler.*

This Court has never before considered whether there is Article III jurisdiction to confirm a purely retrospective monetary award that has already been fully paid and satisfied. Although this Court has rejected the view that compliance is a valid ground to oppose confirmation on the merits, it has never had occasion to address the jurisdictional issue.

---

[3] Although IBM did not raise this Article III problem in the district court, it is well settled that parties "cannot waive subject matter jurisdiction by express consent, conduct, or estoppel because they fail to challenge jurisdiction early in the proceedings." *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 303 (2d Cir. 1994) (quotation marks and brackets omitted); *see also Fox*, 42 F.3d at 140 ("Defects in subject matter jurisdiction cannot be waived and may be raised at any time during the proceedings.").

To be sure, in *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007), the Court rejected the argument that the district court erred by "confirm[ing] awards that had already been complied with." *Id.* As the court explained, the appellants there "failed to show why prior compliance should serve as a ground for refusal to confirm an arbitration award." *Id.* "At the confirmation stage, the court is not required to consider the subsequent question of compliance." *Id.* As a result, because the complaining parties "did not provide a sufficient reason for refusing to confirm the [awards]," the Court affirmed confirmation. *Id.*

For at least four reasons, however, *Zeiler* did not conclude that a district court has Article III jurisdiction to confirm a purely retrospective monetary arbitral award that has already been fully satisfied.

*First*, *Zeiler* did not address Article III jurisdiction at all. Indeed, neither the parties' briefing nor the opinion itself said anything about Article III, the case-or-controversy requirement, or mootness. To the contrary, *Zeiler* addressed only whether compliance was a valid basis to oppose confirmation of an award on the merits. In particular, the Court emphasized the "summary" nature of confirmation, "the limited statutory conditions for confirmation or grounds for refusal to confirm," and the

fact that confirmation is not supposed "to involve complex factual determinations." *Id.* Each of those considerations bear on the *merits* of a confirmation request, not whether there is Article III jurisdiction. Accordingly, "since standing was neither challenged nor discussed in [*Zeiler*]," it did not resolve the issue. *Lewis v. Casey*, 518 U.S. 343, 353 n.2 (1996). "As the Supreme Court has emphasized, 'drive-by jurisdictional rulings'" that simply assume jurisdiction without addressing it "'have no precedential effect'" on the question of Article III jurisdiction. *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1076 n.1 (2d Cir. 2021) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998)).

*Second*, unlike in the present case, the arbitral decisions in *Zeiler* provided prospective relief, not purely monetary relief, and thus it is unsurprising that the parties did not raise the jurisdictional issue. As the Court recounted, the arbitral orders arose from complex commercial relationships and required one party (Deitsch) to provide the other (Zeiler) with certain "accounting[s]" of real estate entities and life insurance policies. *Zeiler*, 500 F.3d at 161–62. "The parties disagree[d]" over whether those "accounting orders" "were fully complied with (as

Deitsch contends) or not (as Zeiler contends)." *Id.* And Deitsch's argument was that the accounting orders "could not be confirmed because . . . they were already satisfied." *Id.* at 168.

Those accounting orders, however, were akin to the prospective relief that cases like *Unite Here* and *Teamsters Local 177* recognized as establishing an Article III case or controversy. In such cases (particularly where compliance with the award is in question), a court can award effectual relief by confirming the award and, in turn, opening the door to contempt and injunctive remedies to enforce the award. But, as explained above, a court cannot award effectual relief where (as here) confirming a fully satisfied monetary award would have no practical or legal effect on the parties. Even if *Zeiler* had been framed in terms of Article III jurisdiction, therefore, it would have been correctly decided in line with *Unite Here* and *Teamsters Local 177*—but distinguishable from this case for the same reason those cases are distinguishable.

*Third*, *Zeiler* left open the possibility that confirming a fully satisfied award might not be appropriate in a different case. The Court took care to emphasize that its holding was based on the complaining parties' "fail[ure] to show" why confirmation was impermissible. *Id.* at

169. As the Court summed it up, the parties "did not provide a sufficient reason for refusing to confirm" the awards. *Id.* That left open whether sufficient reason might exist in a future case.

*Finally*, to the extent that *Zeiler* is based on a concern about entangling courts in "complex factual determinations" and transforming the "summary" nature of a confirmation proceeding, that concern is wholly misplaced here. *Id.* Everyone agrees that the Final Award has been fully satisfied. There are no complex factual disputes to resolve, or any factual disputes at all. A dismissal for lack of Article III jurisdiction due to full satisfaction of the award would thus accord with the view that a confirmation proceeding should be a "summary proceeding in nature." *Id.* And even if (in some other case) the Article III question presented a thorny issue, it would be exactly backwards to say that an expeditious confirmation proceeding trumps a constitutional requirement; it is the Constitution that reigns supreme.

For all of these reasons, *Zeiler* does not and could not hold that a district court has Article III jurisdiction where (as here) a purely monetary arbitral award has already been fully satisfied. The Court,

therefore, should vacate and remand with instructions to dismiss for lack of jurisdiction.

## B. The District Court Lacked Statutory Jurisdiction.

Even if the district court had Article III jurisdiction, its decision still must be vacated because it lacked statutory subject-matter jurisdiction. It had no federal-question jurisdiction under 28 U.S.C. § 1331, and no diversity jurisdiction under § 1332.

Stafford's petition did not identify a specific basis for the district court's subject matter jurisdiction. At the time she filed her petition, however, this Court's case law provided that courts "may 'look through'" an FAA confirmation or vacatur petition to determine if the underlying controversy presents a federal question. *See Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 388 (2d Cir. 2016). Stafford's underlying ADEA claim that she asserted in the underlying arbitration presented a federal question. Thus, as long as *Doscher* remained good law, the district court had subject matter jurisdiction under that decision.

After Stafford filed her petition, however—and shortly before the district court entered its final order—the Supreme Court rejected *Doscher*'s "look through" rule in *Badgerow v. Walters*, 142 S. Ct. 1310

(2022). As the Court explained, a district court's subject-matter jurisdiction in a confirmation proceeding cannot rest on the fact that a federal claim was asserted in the underlying arbitration, but instead must be apparent from "the face of the application itself." *See id.* at 1316. Accordingly, the petition must show either diversity jurisdiction (because the "parties are citizens of different States (with over $75,000 in dispute))" or raise a federal issue in support of confirmation. *Id.*

In this case, the district court lacked subject-matter jurisdiction under either prong. First, there is no federal-question jurisdiction because Stafford's petition does not "allege[] that federal law (beyond Section 9 or 10 itself) entitles [her] to relief." *Id.*

And second, there is no diversity jurisdiction because there is no amount in controversy. Although the petition pleads that the parties reside in different states (JA22, ¶¶ 1–2), it says nothing about the amount in controversy. Nor could it, as there was no controversy about IBM's paying the award. Indeed, as the district court recognized, "following the arbitrator's ruling, IBM began processing payment of all amounts owed to Stafford and her counsel under the Final Award," and by the time IBM responded to the petition to confirm, IBM had "fully

satisfied all the terms of the Final Award." JA65. There was never a suggestion that full payment would not be made.

## II.    This Court Should Reverse The Unsealing Order.

Even if the Court finds that the district court had jurisdiction, it should reverse the district court's order unsealing the Final Award, because the district court misapprehended the public-access doctrine.

The public-access doctrine protects "[t]he common law right of public access to judicial documents." *Lugosch*, 435 F.3d at 119. The doctrine's "presumption of access" is rooted in transparency—a "need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Id.* (quoting *Amodeo II*, 71 F.3d at 1048). To that end, the doctrine provides a "monitoring" function that ensures "conscientiousness, reasonableness, or honesty of judicial proceedings." *Id.* (quoting *Amodeo II*, 71 F.3d at 1048).

The presumption of public access applies, however, only to "judicial documents." *Id.* Accordingly, the first step in the inquiry is to determine whether the documents at issue "are indeed 'judicial documents.'" *Id.* As this Court has made clear, "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject

to the right of public access." *Id.* Instead, "[i]n order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")). And a document is relevant to the performance of the judicial function "if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019); *see also Amodeo I*, 44 F.3d at 146 (documents relevant to judicial function if they would have "informed" the court's decision).

If the documents in question are judicial documents then a "presumption of [public] access attaches," and the court must "determine the weight of that presumption." *Lugosch*, 435 F.3d at 119. The weight is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* (quoting *Amodeo II*, 71 F.3d at 1049). In general, "the information will fall somewhere on a continuum from

matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (quoting *Amodeo II*, 71 F.3d at 1049). "Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Amodeo II*, 71 F.3d at 1050. And "[d]ocuments that play no role in the performance of Article III functions . . . lie entirely beyond the presumption's reach[.]" *Id.*

Finally, "after determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" *Lugosch*, 435 F.3d at 120 (quoting *Amodeo II*, 71 F.3d at 1050). "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1050).

Applied in this case, the public-access doctrine does not require that the Final Award be unsealed. First, the Final Award is not a judicial document subject to the presumption of public access because the contents of the Final Award were irrelevant to the judicial function—the

district court's confirmation of the Final Award. The Final Award's confirmability was undisputed, and thus, by law, the district court was required to confirm it regardless of its contents. Second, even if the Final Award were a judicial document, any presumption of public access would be exceedingly weak (given the absence of any dispute over the Final Award's confirmability) and easily overcome (given the FAA's strong policy in favor of confidential arbitration). Because the district court offered no persuasive responses to these arguments, the district court's unsealing order should be reversed.

### A. The Final Award Is Not a Judicial Document Subject to the Presumption of Public Access.

**1.** To begin, the public-access doctrine is not implicated in this case for the simple reason that the Final Award is not a judicial document. As discussed above, "[i]n order to be designated a judicial document"—and thus, subject to the public-access doctrine—"'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" *Lugosch*, 435 F.3d at 119. In other words, the document must "reasonably have [had] the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without

regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown*, 929 F.3d at 49.

The Final Award, however, *did not* reasonably have the tendency to influence the confirmation of the Final Award. That is especially clear because the court lacked jurisdiction to confirm the award. But even if there was jurisdiction, the district court was required to confirm the award regardless of its contents because IBM did not oppose confirmation and already had complied with the award. Under the FAA, the court "must grant" a petition to confirm "unless the award is vacated, modified, or corrected," 9 U.S.C. § 9, and a court may vacate, modify, or correct an award only "upon the application of any party," *id.* §§ 10–11. Thus, since no party here filed any such application, the court had no reason to review the award's contents and was required to confirm.

As the Third Circuit put it in *Teamsters Local 177*, "[t]he FAA not only authorizes, but *mandates*, that district courts confirm arbitration awards." 966 F.3d at 248 (emphasis added); *see Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984) (stating that "the confirmation of an arbitration award is a summary proceeding"). A court thus has no discretion to refuse confirmation of an unopposed petition. The upshot is

that the contents of the Final Award—by law—could not "reasonably have [had] the tendency to influence a district court's ruling" on whether to confirm the award. *Brown*, 929 F.3d at 49.

Accordingly, the Final Award is not a judicial document subject to the presumption of public access because it was not "'relevant to the performance of the judicial function and useful in the judicial process.'" *Lugosch*, 435 F.3d at 119. The point of the public-access doctrine is to provide transparency in "the administration of justice" by allowing the public to view documents that have some bearing on the adjudicatory process. *Id.* (quoting *Amodeo II*, 71 F.3d at 1048). Yet unsealing the Final Award would give the public no insight into why the court was required to confirm the confidential award. The Final Award is not a judicial document subject to public access.

**2.** The district court's only response to this argument was that "[t]his argument has been previously raised by parties and has been rejected by several courts in this District." JA68 (citing *Susquehanna Int'l Grp. Ltd. v. Hibernia Express (Ir.) Ltd.*, No. 21 Civ 207, 2021 WL 3540221, at *2 (S.D.N.Y. Aug. 11, 2021); *Clearwater Ins. Co. v. Granite State Ins. Co.*, No. 15-cv-165, 2015 WL 500184, at *3 (S.D.N.Y. Feb. 5,

2015)). Thus, "[i]n accordance with numerous district court decisions, [the district court held] that the Final Award is a judicial document." *Id.*

This Court, of course, is not bound by the cited district court decisions—and that is especially so because, with due respect to the authors of these decisions, their reasoning is mistaken. The core refrain in these cases is that an arbitration award "directly affects the adjudication of the [petition to confirm]," and thus, "a strong presumption of public access applies." *Susquehanna Int'l Grp. Ltd.*, 2021 WL 3540221, at *3; *see Clearwater Ins.*, 2015 WL 500184, at *3 ("[T]he petition, memoranda, and other supporting documents filed in connection with a petition to confirm an arbitration award (including the Final Award itself) are judicial documents that directly affect the Court's adjudication of that petition.").

As explained above, however, the FAA imposes a mandate: The district court "must" confirm an award if no party files an "application" to vacate, modify, or correct it. 9 U.S.C. §§ 9–11. Although the award is the object of the confirmation, its contents are entirely irrelevant to the judicial act of confirmation when no party opposes it. Accordingly, the contents of an unopposed award simply do not—and cannot—"directly

affect the Court's adjudication" of the petition to confirm the award. *Clearwater Ins.*, 2015 WL 500184, at *3.

Accordingly, the Court should reverse the district court's unsealing order on the ground that the Final Award is not a judicial document subject to the presumption of public access.

## B. Even If the Final Award Were a Judicial Document, the Presumption of Public Access Would be Weak and Easily Overcome.

In any event, even if the Final Award were subject to the presumption of public access, that presumption would be weak and easily overcome in this case. There is little legitimate public interest in viewing a private and confidential arbitration award when nobody opposes its confirmation. Any public interest in accessing such an award is outweighed by the FAA's strong policy favoring confidential arbitration.

**1.** To start, the "weight" of the presumption of public access would be remarkably weak. *Lugosch*, 435 F.3d at 119. As noted above, the weight of the presumption is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id*. The confirmation function is "summary" in nature to begin with, *Florasynth*, 750 F.2d at

176, and here the district court did not even need to make a summary determination because the petition was unopposed. Thus, as just explained, the contents of the Final Award played (and could play) no role in the district court's confirmation of the Final Award. Indeed, they had "no role"—not even "a negligible role"—"in the performance of Article III functions. *Amodeo II*, 71 F.3d at 1050. As a result, the Final Award has no value to "those monitoring the federal courts," placing the strength of the presumption at its lowest ebb. *Cf., e.g.*, *In re: IBM Arb. Agreement Litig.*, No. 21-cv-6296, 2022 WL 3043220, at *2 (S.D.N.Y. Aug. 2, 2022) ("Given that the Court did not, and *could not*, consider these documents in resolving IBM's motion to dismiss, . . . they would be subject to only a weak presumption of public access.").

**2.** The only remaining question, therefore, would be whether there are "competing considerations" that would override the de minimis presumption of public access to the Final Award. *Lugosch*, 435 F.3d at 120 (quoting *Amodeo II*, 71 F.3d at 1050). And the answer would be yes.

One "strong" competing consideration in favor of maintaining documents under seal is the FAA's rigorous policy in favor of confidential arbitration. The Supreme Court has long emphasized that, pursuant to

the FAA, "[c]ourts must 'rigorously enforce' arbitration agreements according to their terms." *Italian Colors Rest.*, 570 U.S. at 233 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). The confidentiality provision that governs the Final Award is one such term. As this Court has recognized, "confidentiality is a paradigmatic aspect of arbitration." *Guyden v. Aetna Inc.*, 544 F.3d 376, 385 (2d Cir. 2008); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344–45 (2011) (emphasizing "affording parties discretion in designing arbitration processes," including the ability to agree "that proceedings be kept confidential"). Thus, any attack on arbitral confidentiality "is, in part, an attack on the character of arbitration itself." *Guyden*, 544 F.3d at 385.

The FAA's strong protection for confidential arbitration, however, would be a hollow promise if—as the district court's unsealing order suggests—every confirmation proceeding under the FAA allows the winning party to demand public disclosure of the award. It cannot be that the law intended to ensure the rigorous enforcement of arbitration agreement terms (including confidentiality provisions) has a massive loophole that overrides those very terms.

This absurd result has no basis in law or common sense—and it leads to additional downstream absurdities. For example, a party who wins prospective relief in confidential arbitration may wish to obtain judicial confirmation and the contempt and injunctive tools that come along with confirmation. But, if that party hopes to keep some aspects of the award confidential, that party may well conclude that continued confidentiality is worth the serious risk of forgoing judicial confirmation—even though the FAA created a specific confirmation mechanism to ensure that arbitral awards can be judicially enforceable. Parties would then have to choose between their right to take advantage of the FAA's confirmation process, or their right to have their FAA-protected arbitral confidentiality terms upheld. That makes no sense. Ordering unsealing every time someone seeks to confirm a confidential arbitration award would, therefore, make a mockery of the FAA's entire statutory scheme. This is especially so where, as here, the award is not even a judicial document or, if it is, carries presumption-of-public-access weight that is vanishingly light.

Another district court in this Circuit recently recognized that the presumption of public access is outweighed by the FAA's mandate that

"'courts . . . rigorously enforce arbitration agreements,' including confidentiality provisions, 'according to their terms.'" *In re: IBM Arb. Agreement Litig.*, 2022 WL 3043220, at *2. This Court should reach the same conclusion here.

**3.** In the present case, the district court did not engage this argument. The district court acknowledged IBM's position that "allowing unsealing would violate the strong federal policy in favor of protecting arbitral confidentiality." JA69. Yet the court never took the argument head-on, instead stating only that "IBM has failed to identify factors that overcome the strong presumption of public access and weigh in favor of sealing the entire Final Award." *Id.* Notably, however, the district court cited the parties' "agree[ment] to maintain the confidentiality of the arbitration proceedings" as one of the "unique circumstances of this case" warranting a stay pending appeal. JA70. That unique circumstance not only justifies the stay, but it also underscores that the unsealing order is fundamentally at odds with the public-access doctrine and the FAA.

## <u>CONCLUSION</u>

IBM respectfully requests that the Court vacate, or in the alternative reverse, the district court's judgment.

Dated: October 17, 2022

Respectfully submitted,

<u>*/s/* Matthew W. Lampe</u>

Anthony J. Dick
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Telephone: (202) 879-3939
ajdick@jonesday.com

Matthew W. Lampe
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
mwlampe@jonesday.com

J. Benjamin Aguiñaga
JONES DAY
2727 N. Harwood St., Ste. 500
Dallas, TX 75201
Telephone: (214) 220-3939
jbaguinaga@jonesday.com

*Counsel for Respondent-Appellant IBM*

# CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook Standard font.

This brief complies with the type-volume limitation of Local Rule 32.1(a)(4)(A) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), it contains 8,292 words, as determined by the word-count function of Microsoft Word 2016.

Dated: October 17, 2022

*/s/ Matthew W. Lampe*
Matthew W. Lampe

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2022, an electronic copy of the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished on them via the appellate CM/ECF system.

Dated: October 17, 2022

/s/ *Matthew W. Lampe*
Matthew W. Lampe