No. 22-1240

# United States Court of Appeals for the Second Circuit

_____

ELIZABETH STAFFORD,
                              *Petitioner-Appellee,*

v.

INTERNATIONAL BUSINESS MACHINES CORP.,
                              *Respondent-Appellant.*
_____

On Appeal from the United States District Court for the
Southern District of New York
Case No. 21-cv-06164 – Judge J. Paul Oetken

_____

## PETITIONER-APPELLEE'S RESPONSE BRIEF

Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800
sliss@llrlaw.com

*Counsel for Petitioner-Appellee*

**CORPORATE DISCLOSURE STATEMENT**

Petitioner-Appellee Elizabeth Stafford hereby makes the following corporate disclosure statement pursuant to Fed. R. App. R. 26.1:

Petitioner-Appellee is an individual and therefore has no parent corporation or shareholders.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

INTRODUCTION ............................................................................................. 1

JURISDICTIONAL STATEMENT ................................................................... 6

STATEMENT OF THE ISSUES FOR REVIEW ................................................ 6

STATEMENT OF THE CASE ........................................................................... 7

SUMMARY OF ARGUMENT .......................................................................... 8

STANDARD OF REVIEW ............................................................................... 10

ARGUMENT .................................................................................................... 10

    I.     There is No Question That the District Court Had
           Jurisdiction Over Petitioner's Claim .................................................. 10

         A.    The District Court Had Article III Jurisdiction
              Because the FAA Creates a Right to Confirmation of
              an Arbitration Award, Regardless of Whether the
              Award Has Been Complied With ............................................. 10

              1.    Confirmation Under the FAA is Mandatory,
                     and Parties Seeking Confirmation Have a
                     Statutory Right to Obtain Confirmation ........................ 10

              2.    Jurisdiction Does Not Depend on a Showing of
                     Non-Compliance, Regardless of Whether the
                     Award Was Monetary or Equitable in Nature ............... 14

         B.    The District Court Had Diversity Jurisdiction ......................... 17

    II.    The District Court Correctly Ordered the Award Unsealed .............. 21

         A.    The Arbitration Award is a Judicial Document That
               is Subject to a Strong Presumption of Public Access .............. 23

B.    There Are No Countervailing Interests Militating Against Public Access ................................................. 27

    1.    The Existence of a Confidentiality Provision in the Arbitration Agreement Does Not Override the Presumption of Public Access ................................. 27

    2.    The FAA Does Not Override the Presumption of Public Access ............................................................. 30

CONCLUSION .................................................................................... 32

CERTIFICATE OF COMPLIANCE ....................................................... 33

CERTIFICATE OF SERVICE ............................................................... 34

# TABLE OF AUTHORITIES

## Cases

A.F.A. Tours. Inc. v. Whitchurch
    937 F.2d 82 (2d Cir. 1991) ...............................................................4

Already, LLC v. Nike, Inc.
    133 S. Ct. 721 (2013)....................................................................11

Am. Nursing Home v. Loc. 144 Hotel, Hosp., Nursing Home & Allied
    Servs. Union, SEIU, AFL-CIO
    No. 89 CIV. 1704 (DNE), 1992 WL 47553 (S.D.N.Y. Mar. 4,
    1992) ................................................................................... 13, 14

Arbordale Hedge Invs., Inc. v. Clinton Grp.. Inc.
    No. 99 CIV. 4452 MBM, 1999 WL 1000939 (S.D.N.Y. Nov. 4,
    1999) ..............................................................................................13

Badgerow v. Walters
    142 S. Ct. 1310 (2022)........................................................... passim

Beacon Const. Co. v. Matco Elec. Co.
    521 F.2d 392 (2d Cir. 1975) .........................................................18

Bernstein Litowitz Berger & Grossmann LLP
    814 F.3d 132 (2d Cir. 2016) ...................................... 10, 22, 25, 27

Bristol-Myers Squibb Co. v. Novartis Pharma AG
    2022 WL 2133826 (S.D.N.Y. June 14, 2022),..............................31

Bristol-Myers Squibb Co. v. Novartis Pharma AG
    2022 WL 2274354 (S.D.N.Y. June 23, 2022)...............................31

Brown & Pipkins, LLC v. Serv. Emps. Int'l Union
    846 F.3d 716 (4th Cir. 2017) .................................................. 14, 16

Brown v. Maxwell
    929 F. 3d 41 (2d. Cir. 2019) .........................................................26

Bull HN Info. Sys., Inc. v. Hutson
    229 F.3d 321 (1st Cir. 2000)..............................................................19

Burgess v. Town of Wallingford
    2012 WL 4344194 (D. Conn. Sept. 21, 2012)............................................28

Campbell-Ewald Co. v. Gomez
    577 U.S. 153 (2016)......................................................................10

Century Indem. Co. v. AXA Belgium
    2012 WL 4354816 (S.D.N.Y. Sept. 24, 2012) ............................................29

Church Ins. Co. v. Ace Prop. & Cas. Ins. Co.
    2010 WIL 3958791 (S.D.N.Y. Sept. 23, 2010)...........................................25

Clearwater Ins. Co. v. Granite State Ins. Co.
    2015 WL 500184 (S.D.N.Y. Feb. 5, 2015) ...................................... 23, 25, 27

Cohen v. Gerson Lehrman Group, Inc.
    2011 WL 4336679 (S.D.N.Y. Sept. 15, 2011) ............................................30

D.H. Blair & Co. v. Gottdeiner
    462 F.3d 95 (2d Cir. 2006) ...............................................................11

Dawson v. Merck & Co.
    2021 WL 242148 (E.D.N.Y. Jan. 24, 2021)...............................................27

Dentons US LLP v. Zhang
    2021 WL 2187289 (S.D.N.Y. May 28, 2021)..............................................29

Dist. Council No. 9 v. APC Painting, Inc.
    272 F. Supp. 2d 229 (S.D.N.Y. 2003) .....................................................13

Durant, Nichols, Houston, Hodgson & Cortese–Costa, P.C. v. Dupont
    565 F.3d 56 (2d Cir. 2009) .............................................................4, 18

DXC Tech. Co. v. Hewlett Packard Enter. Co.
    2019 WL 4621938 (S.D.N.Y. Sept. 11, 2019) ............................................25

F.D.I.C. v. Four Star Holding Co.
    178 F.3d 97 (2d Cir. 1999) ...............................................................12

First State Ins. Co. v. National Cas. Co.
  2013 WL 8675930 (S.D.N.Y. Feb. 19, 2013) ................................................29

Florasynth, Inc. v. Pickholz
  750 F.2d 171 (2d Cir. 1984) .................................................... 11, 15

Glob. Reinsurance Corp.-U.S. Branch v. Argonaut Ins. Co.
  No. 07 CIV. 8196 (PKC), 2008 WL 1805459 (S.D.N.Y. Apr.
  21, 2008), as amended (Apr. 24, 2008) ........................................................24

Guyden v. Aetna, Inc.
  544 F.3d 376 (2d Cir. 2008) ..........................................................................31

Hall Street Associates, L.L.C. v. Mattel, Inc.
  552 U.S. 576 (2008).......................................................................................15

Harry Hoffman Printing, Inc. v. Graphic Communications,
  International Union, Local 261
  912 F.2d 608 (2d Cir.1990) ............................................................................4

Howell v. International Business Machines Corp.
  Case No. 22-cv-518 (N.D. Ga. 2021).............................................................6

Hunt v. Washington State Apple Advertising Comm'n
  432 U.S. 333 (1977).......................................................................................18

In re Document Techs. Litig.
  282 F. Supp. 3d 743 (S.D.N.Y. 2017) ...........................................................30

In re Gen. Motors LLC Ignition Switch Litig.
  2015 WL 4750774 (S.D.N.Y. Aug. 11, 2015) ...............................................29

Karsner v. Lothian
  532 F.3d 876 (D.C. Cir. 2008).......................................................................19

Katz v. Warner-Lambert Co.
  9 F. Supp. 2d 363 (S.D.N.Y. 1998) ...............................................................20

Kheel v. Port of N.Y. Auth.
  457 F.2d 46 (2d Cir. 1972) ............................................................................18

Laudig v. International Business Machines Corp.
 Case No. 21-cv-5033 (N.D. Ga. 2021) ............................................................ 6

Lohnn v. International Business Machines Corp.
 2022 WL 36420 (S.D.N.Y. Jan. 4, 2022) ............................................. passim

Lohnn v. International Business Machines Corp.
 No. 22-23 (2d. Cir. Jan. 28, 2022) ......................................... 17, 22

Lugosch v. Pyramid Co. of Onondaga
 435 F.3d 110 (2d Cir. 2006) .................................................. passim

Moore v. Betit
 511 F.2d 1004 (2d Cir. 1975) ........................................................ 18

Mortgageit Inc. v. Wallberg
 2002 WL 31324135 (S.D.N.Y. Oct. 16, 2002) ............................................ 20

Nat'l Cas. Co. v. Resolute Reinsurance Co.
 2016 WL 1178779 .................................................................. passim

Ottley v. Schwartzberg
 819 F.2d 373 (2d Cir. 1987) ........................................................ 12

Redeemer Committee of Highland Credit Strategies Funds v.
 Highland Capital Management, L.P.
 182 F. Supp. 3d 128 (S.D.N.Y. 2016) .............................................. 23

Robert Bosch GmbH v. Honewell Int'l Inc.,
 No. 14 CV 9432 PKC, 2015 WL 128154 (S.D.N.Y. Jan. 6,
 2015) ......................................................................... 24, 25

Salerno v. Credit One Bank, N.A.
 2020 WL 1558153 (W.D.N.Y. Mar. 31, 2020) .......................................... 29

Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.
 668 F.3d 60 (2d Cir. 2012) ........................................................... 3

Schusterman v. Mazzone
 2019 WL 2547142 (S.D.N.Y. June 19, 2019) .......................................... 13

Simpson v. Peloton Interactive, Inc.
    2021 U.S. Dist. LEXIS 125416 (S.D.N.Y. July 2, 2021)..........................3, 12

Steinberg v. Nationwide Mut. Ins. Co.
    91 F. Supp. 2d 540 (E.D.N.Y. 2000)..............................................................20

Susquehanna Int'l Grp. Ltd. v. Hibernia Express (Ireland) Ltd.
    2021 WL 3540221 (S.D.N.Y. Aug. 11, 2021) ...................................... 26, 28

Teamsters Local 177 v. United Parcel Service
    966 F.3d 245 (3d Cir. 2020) ............................................................ 14, 15, 16

Theis Research, Inc. v. Brown & Bain
    400 F.3d 659 (9th Cir. 2005) ........................................................................19

U.S. v. Amodeo
    71 F.3d 1044 (2d Cir. 1995) ........................................................... 22, 23, 28

Union Pac. R. Co. v. Mower
    219 F.3d 1069 (9th Cir. 2000) ......................................................................20

Unite Here Loc. 1 v. Hyatt Corp.
    862 F.3d 588 (7th Cir. 2017) ................................................................. 14, 16

United States v. Amodeo
    44 F.3d 141 (2d Cir. 1995) ...........................................................................22

Utica Mutual Insurance Co. v. R&Q Insurance Co. f/k/a INA
    Reinsurance Co.
    2015 WL 13639179 (N.D.N.Y Dec. 10, 2015) ............................................29

Veleron Holding, B.V. v. Stanley
    2014 WL 1569610 (S.D.N.Y. April 16, 2014)..............................................24

Volt Information Sciences, Inc. v. Board of Trustees of Leland
    Stanford Jr. Univ.
    489 U.S. 468, 478 (1989) .............................................................................31

Yong Qin Luo v. Mikel
    625 F.3d 772 (2d Cir. 2010). ..........................................................................2

Zeiler v. Deitsch
     500 F.3d 157 (2d Cir. 2007) ........................................... 12, 13, 15

**Statutes**

28 U.S.C. § 1291 ....................................................................8

28 U.S.C. § 1332.................................................... 5, 8, 10, 22

29 U.S.C. § 185 ...................................................................16

29 U.S.C. § 621 ............................................................ 1, 9, 25

9 U.S.C. § 9 ................................................................. passim

**Other Authorities**

Amiah Taylor, *IBM execs referred to older employees as 'dinobabies'*
    *and a 'dated maternal workforce,' according to explosive court*
    *docs*
    Fortune, February 14, 2022 ...........................................17

Noam Scheiber, *Making 'Dinobabies' Extinct: IBM's Push for a*
    *Younger Workforce*
    NEW YORK TIMES, February 14, 2022 ...........................17

**Rules**

Fed. R. App. P. 27(d) ...........................................................44

Fed. R. App. P. 32(a) ...........................................................44

Fed. R. App. P. 32(f) ............................................................44

Fed. R. App. R. 26.1 ............................................................. i

**INTRODUCTION**

This case was brought by Petitioner Elizabeth Stafford, a former employee of Respondent International Business Machines Corp. ("IBM") who was terminated in a layoff that she alleged violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Upon her termination, Petitioner entered into an arbitration agreement with IBM that released (in exchange for a small severance payment) almost all claims she may have against IBM, but not claims under the ADEA. Under this agreement, Petitioner was permitted to pursue an ADEA claim against IBM, but it had to be brought in a confidential individual arbitration.

Petitioner brought her claim in arbitration, and a final award was issued in her favor in July 2021. IBM paid the award. Petitioner then initiated this action under Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, requesting that the award be confirmed and unsealed. Seemingly recognizing that the FAA creates a mandatory right to confirmation, and given that its own arbitration agreement provides for seeking confirmation in court, IBM did not even oppose confirmation. See 9 U.S.C. § 9 ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for

1

an order confirming the award, and thereupon ***the court must grant such an order***

unless the award is vacated, modified, or corrected as prescribed in

sections 10 and 11 of this title.") (emphasis added); JA32 (providing opportunity

for either party to enter award in court of competent jurisdiction).[1]

On appeal, IBM now raises – for the first time – an argument that the

District Court lacked Article III and subject matter jurisdiction to issue its award,

because IBM paid the award.[2]  IBM first contends that, under Article III, there was

no live case or controversy before the District Court, because there was never a

dispute as to whether IBM would comply with the award, and indeed, IBM did pay

the award.  This argument fails.  No provision of Section 9 of the FAA requires the

existence of a live dispute as to compliance with the award in order to obtain

confirmation.  See 9 U.S.C. § 9.  By contrast, as at least two district courts have

recognized, the statute establishes a *mandatory* right to obtain confirmation, and

that right is not extinguished until such confirmation is obtained.  Courts therefore

always have Article III jurisdiction over confirmation proceedings, regardless of

whether there is a dispute about compliance.  See, e.g., Nat'l Cas. Co. v. Resolute

---

[1]    Sections 10 and 11 of the FAA speak to the circumstances in which an award can be vacated, modified, or corrected, none of which are applicable here. See 9 U.S.C. §§ 10, 11.

[2]    Petitioner recognizes that arguments as to the court's subject matter jurisdiction can be raised at any time, including for the first time on appeal.  See, e.g., Yong Qin Luo v. Mikel, 625 F.3d 772, 775 (2d Cir. 2010).

Reinsurance Co., 2016 WL 1178779, at *3 (S.D.N.Y. Mar. 24, 2016) ("Because a party to an arbitration is entitled to confirmation of an award, until it receives that confirmation[,] an ongoing case and controversy exists."); Simpson v. Peloton Interactive, Inc., 2021 U.S. Dist. LEXIS 125416, at *4 (S.D.N.Y. July 2, 2021) ("[E]ven when an arbitration award has been fully paid, until the award is confirmed, a case or controversy exists and the Court has subject-matter jurisdiction.").

IBM next asserts that the Supreme Court's decision in Badgerow v. Walters, 142 S. Ct. 1310 (2022), which was issued in March 2022 while Petitioner's request for unsealing was pending, rendered the District Court without subject matter jurisdiction.[3] In Badgerow, the Supreme Court determined that Section 9 of the FAA does not create an independent basis for federal subject matter jurisdiction in suits involving confirmation of arbitration awards resolving questions of federal law and thus that a petition to confirm must raise an independent form of federal jurisdiction in the form of federal question or diversity jurisdiction. Id. at 1322.[4]

---

[3]     Even though the Badgerow decision was issued more than a month before the District Court ruled in this case, IBM did not notify the District Court of its issuance or use it to otherwise challenge the continuing jurisdiction of the District Court.

[4]     This holding appears to be consistent with prior decisions of this Court. See, e.g., Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012) ("The FAA does not 'independently confer subject matter jurisdiction on the federal courts. There must be an independent basis of

Here, there is no question that diversity jurisdiction existed under 28 U.S.C.

§ 1332(a), as Petitioner is a citizen of Connecticut and IBM is headquartered in

New York.  The amount-in-controversy requirement is satisfied because ███████

████████████████████████████████████████████████████████████

See, e.g., Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C., 565 F.3d 56,

64 (2d Cir. 2009) (finding diversity jurisdiction existed in confirmation

proceedings where underlying arbitration demand sought more than $75,000).[5]

Moreover, the value to IBM of keeping the award sealed (and therefore

inaccessible to other age discrimination litigants) is unquestionably worth more

than $75,000.  See, e.g., A.F.A. Tours. Inc. v. Whitchurch, 937 F.2d 82 (2d Cir.

1991) ("Where the plaintiff seeks injunctive relief, the value of his claim is

generally assessed with reference to the right he seeks to protect and measured by

the extent of the impairment to be prevented by the injunction.  In calculating that

---

jurisdiction before a district court may entertain petitions' to confirm or vacate an
award under the FAA.") (quoting Durant, Nichols, Houston, Hodgson & Cortese–
Costa, P.C. v. Dupont, 565 F.3d 56, 63 (2d Cir. 2009)) (itself quoting Harry
Hoffman Printing, Inc. v. Graphic Communications, International Union, Local
261, 912 F.2d 608, 611 (2d Cir.1990)).  IBM therefore should have been on notice
of this issue well in advance of the Badgerow decision.

[5]     Moreover, the potential liability exposure to IBM, for having this award
unsealed, while hundreds of similar arbitrations raising ADEA claims against it
remain pending, is well more than $75,000.  Clearly the reason that IBM is
contesting the unsealing so vigorously is that it knows that making this award
public could be very helpful to other employees pursuing similar claims against it.

4

impairment, the court may look not only at past losses but also at potential harm.").

Thus, there is no question that the District Court had subject-matter jurisdiction

over Petitioner's case.

As it did below, on appeal, IBM continues to oppose Petitioner's request to

unseal the award. IBM contends that the award was subject to a confidentiality

provision in its arbitration agreement with Petitioner and therefore that the award

must remain sealed.[6] Yet as Judge Liman explained in another case ordering

practically the same record to be unsealed, "[t]he Supreme Court and Second

Circuit have long held that there is a presumption of immediate public access to

judicial documents under both the common law and the First Amendment." Lohnn

v. International Business Machines Corp., 2022 WL 36420, at *6 (S.D.N.Y. Jan. 4,

2022) (citing Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 126 (2d Cir.

2006)). The public's right of access attached the moment that Petitioner filed her

case in court, and there is no countervailing interest in keeping the documents

under seal. See Lugosch, 435 F.3d at 123; Lohnn, 2022 WL 36420 at *9. In

recognition of this authority, the District Court properly granted Petitioner's

request to unseal the award. See also Laudig v. International Business Machines

---

[6]     IBM has aggressively wielded the confidentiality provision in its arbitration
agreement in order to block employees pursuing discrimination cases against IBM
from using evidence in support of their claims that Petitioner's counsel have
obtained in other arbitration cases raising the same issues.

5

<u>Corp.</u>, Case No. 21-cv-5033 (N.D. Ga.) (Dkt. 39) (Dec. 16, 2022) (in case seeking to vacate arbitration award, denying IBM's request to seal arbitration documents); <u>Howell v. International Business Machines Corp.</u>, Case No. 22-cv-518 (N.D. Ga.) (Dkt. 35) (Dec. 16, 2022) (same).

Because Article III jurisdiction and diversity jurisdiction both existed when the District Court properly rendered its decision to unseal the award, the District Court's decision should be affirmed.

## JURISDICTIONAL STATEMENT

As discussed further below, the District Court had subject matter jurisdiction over Petitioner's claims pursuant to 28 U.S.C. § 1332(a), as Petitioner is a citizen of Connecticut, IBM is headquartered in New York, and the amount in controversy exceeded $75,000.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 as IBM's appeal is taken from a final order. The final order was issued on May 10, 2022, JA64-71, and IBM filed its notice of appeal on June 6, 2022.

## STATEMENT OF THE ISSUES FOR REVIEW

**(1)** Whether the District Court had Article III jurisdiction to confirm Petitioner's arbitration award, when the FAA establishes a right to obtain confirmation that is not extinguished until confirmation is granted.

**(2)** Whether the District Court had subject matter jurisdiction over Petitioner's request to confirm her award, when Petitioner and IBM are diverse parties and the amount-in-controversy requirement was satisfied.

**(3)** Whether the District Court properly concluded that Petitioner's award should be unsealed, pursuant to this Court's strong presumption that judicial documents must be public. See Lugosch, 435 F.3d at 126.

## STATEMENT OF THE CASE

Petitioner is a former employee of IBM, who was laid off from her position in June 2018. JA23. Prior to her termination, Petitioner entered into a Separation Agreement with IBM that, in exchange for a small amount of severance pay, included a release of various legal claims, but it expressly did not include a release of federal claims of age discrimination under the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. § 621 *et seq*. Id. Rather, the agreement provided that if the terminated employee chose to pursue a claim of age discrimination under the ADEA, the claim would have to be filed in arbitration. Id. Pursuant to this provision, Petitioner filed an arbitration demand against IBM on January 17, 2019. Id. An arbitration hearing was held in March 2021, and, on July 12, 2021, the arbitrator entered a Final Award in Petitioner's favor. Id.

Petitioner filed this case on July 19, 2021, requesting that the District Court confirm and unseal the arbitration award. IBM did not oppose Petitioner's request to confirm the award, but it did oppose Petitioner's request to unseal the award.

On May 10, 2022, the District Court entered an Order granting Petitioner's request to confirm and unseal the award. JA64-JA71. The District Court directed the parties to confer as to any redactions that needed to be made in order to preserve the legitimate privacy interests of non-litigants. JA70. The parties filed, under seal, a proposed redacted version of the award. IBM then filed the instant appeal. JA74.[7]

## SUMMARY OF ARGUMENT

At all times throughout this case, the District Court had Article III jurisdiction and federal subject-matter jurisdiction. A live case or controversy existed at the time Petitioner initiated her confirmation proceeding, even though IBM had already complied with the award, because the FAA creates an independent right to obtain confirmation. IBM's arbitration agreement likewise recognizes the right to seek confirmation. See JA32 ("Any judgment or award issued by an arbitrator may be entered in any court of competent jurisdiction.").

---

[7] The District Court ordered that the unsealing order would be stayed pending IBM's appeal. JA70; JA73.

That right is not extinguished until confirmation is granted. The District Court thus had Article III jurisdiction over the case.

The District Court unquestionably had diversity jurisdiction under 28 U.S.C. § 1332(a); Petitioner is a resident of Connecticut, and IBM is headquartered in New York; the amount-in-controversy exceeded $75,000 because ███████ ████████████████████████████████████ and because more than $75,000 is at stake in this case, as the value to IBM of keeping the confidential information sealed is enormously high.

The District Court properly granted Petitioner's request to unseal the arbitration award. Once it was filed as part of the confirmation petition, the arbitration award became a judicial document subject to a presumption of public access, even though confirmation proceedings are summary proceedings. As numerous courts have found, neither the existence of a confidentiality provision in the arbitration agreement nor the FAA itself are countervailing interests that override that presumption. Indeed, IBM itself recognized that there will be circumstances in which confidentiality might not be maintained, as its arbitration agreement provides that the confidentiality requirement would not apply if required by law or judicial decision. JA32.

The Court reviews a district court's order to seal for an abuse of discretion

with respect to the ultimate decision, clear error as to factual determinations, and

*de novo* as to conclusions of law.  See Bernstein Litowitz Berger & Grossmann

LLP, 814 F.3d 132, 139 (2d Cir. 2016).

# ARGUMENT

**I.      There is No Question That the District Court Had Jurisdiction Over Petitioner's Claim**

**A. The District Court Had Article III Jurisdiction Because the FAA Creates a Right to Confirmation of an Arbitration Award, Regardless of Whether the Award Has Been Complied With**

**1.    Confirmation Under the FAA is Mandatory, and Parties Seeking Confirmation Have a Statutory Right to Obtain Confirmation**

IBM's contention that the District Court did not have Article III jurisdiction

over this case because it had already paid the award is erroneous, because the FAA

itself establishes an unfettered right to obtain confirmation.

Article III § 2 provides that federal courts have jurisdiction over the

adjudication of actual cases or controversies.  Campbell-Ewald Co. v. Gomez, 577

U.S. 153, 154 (2016).  "A case becomes moot ... only when it is impossible for a

court to grant any effectual relief whatever to the prevailing party." Id. (citation

omitted).  Thus, "[a]s long as the parties have a concrete interest, however small, in

the outcome of the litigation, the case is not moot." Id. (citation omitted).  In other

words, "the case is moot if the dispute is no longer embedded in any actual

controversy about the plaintiffs' particular legal rights." Already, LLC v. Nike,

Inc., 133 S. Ct. 721, 727 (2013) (citation omitted) (emphasis added).

Section 9 of the FAA provides that a court presented with a request for an

order confirming an arbitration award "*must grant* such an order unless the award

is vacated, modified, or corrected…" 9 U.S.C. § 9 (emphasis added). In the

Second Circuit, "the successful party [in arbitration] has a right to assume the

award is valid and untainted, and to obtain its confirmation in a summary

proceeding." Florasynth, Inc. v. Pickholz, 750 F.2d 171, 177 (2d Cir. 1984); D.H.

Blair & Co. v. Gottdeiner, 462 F.3d 95, 110 (2d Cir. 2006) ("Confirmation of an

arbitration award is "a summary proceeding that merely makes what is already a

final arbitration award a judgment of the court and the court "must grant" the

award "unless the award is vacated, modified, or corrected.") (quoting Florasynth,

Inc., 750 F.2d at 176 and 9 U.S.C. § 9). As noted above, IBM's agreement also

recognized that confirmation could be sought in court. JA31.

Thus, as a district court presented with the same argument IBM makes here

reasoned, "[b]ecause a party to an arbitration is entitled to confirmation of an

award, until it receives that confirmation[,] an ongoing case and controversy

exists." Nat'l Cas. Co. v. Resolute Reinsurance Co., 2016 WL 1178779, at *3

(S.D.N.Y. Mar. 24, 2016). Parties therefore "retain an undisputed right to §

9 confirmation whatever the nature of an award and the parties' degree of compliance with it." Id. See also Simpson v. Peloton Interactive, Inc., 2021 U.S. Dist. LEXIS 125416, at *4 (S.D.N.Y. July 2, 2021) ("[E]ven when an arbitration award has been fully paid, until the award is confirmed, a case or controversy exists and the Court has subject-matter jurisdiction.").

Moreover, this Court expressly held in Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007), that confirmation does not require a "live" dispute related to compliance with the award. See id. ("Defendant "has failed to show why prior compliance should serve as a ground for refusal to confirm an arbitration award.")[8]; see also Ottley v. Schwartzberg, 819 F.2d 373, 377 (2d Cir. 1987) (ordering district court to confirm arbitration award even where there was no dispute that respondent had paid the award).

Following that precedent, numerous courts have confirmed awards even where there was no dispute as to compliance with the award. See, e.g., Am. Nursing Home v. Local 144 Hotel, Hosp., Nursing Home & Allied Servs. Union,

---

[8]    IBM contends that Zeiler should be disregarded because it did not directly address issues of Article III standing, but "federal courts are under an independent obligation to examine their own jurisdiction." F.D.I.C. v. Four Star Holding Co., 178 F.3d 97, 101 (2d Cir. 1999).  Moreover, as explained above Section I.A.1, a straightforward analysis of the jurisdictional issue makes clear that there is Article III jurisdiction here.  Thus, even if the Zeiler court did not expressly reach its holding based on a determination that Article III jurisdiction existed, Article III jurisdiction unquestionably exists.

SEIU, AFL-CIO, 1992 WL 47553, at *2 (S.D.N.Y. Mar. 4, 1992) ("The issues of compliance and confirmation are distinct from each other. A court may confirm an arbitration award even in the absence of a showing of non-compliance."); Arbordale Hedge Invs., Inc. v. Clinton Group, Inc., 1999 WL 1000939 *1 n.3 (S.D.N.Y. Nov. 4, 1999) (refusing to "create a new exception" to confirmation of an arbitration award where the award "has been paid in full."); Dist. Council No. 9 v. APC Painting, Inc., 272 F. Supp. 2d 229, 239 (S.D.N.Y. 2003) (finding, in case seeking confirmation under the Labor Management Relations Act, 29 U.S.C. § 185, that "whether these awards have been satisfied—a fact disputed by plaintiff— has no bearing on whether the arbitration awards should be confirmed.").

While IBM attempts to limit Zeiler's applicability to circumstances in which a party seeks to confirm a satisfied award providing for prospective, non-monetary relief, rather than money damages, courts in this Circuit have never limited confirmation in that way. See, e.g., Schusterman v. Mazzone, 2019 WL 2547142, at *4 (S.D.N.Y. June 19, 2019) ("It is undisputed that Mazzone has by now paid the Award balance. But that payment does not negate the right of the prevailing party, Schusterman, to seek judicial confirmation of the arbitral decision."); Nat'l Cas. Co., 2016 WL 1178779, at *3 (confirming award even where parties agreed that defendant had complied with monetary award); Am. Nursing Home, 1992 WL

47553, at *2 (confirming award even where defendant asserted it had complied with the award, which required payment of monetary damages).

## 2. Jurisdiction Does Not Depend on a Showing of Non-Compliance, Regardless of Whether the Award Was Monetary or Equitable in Nature

IBM's reliance on a trio of out-of-circuit cases to argue that jurisdiction exists only over confirmation of awards involving equitable relief falls flat, as not one of the cases actually reaches that holding.  See Brown & Pipkins, LLC v. Serv. Emps. Int'l Union, 846 F.3d 716, 723 (4th Cir. 2017); Unite Here Loc. 1 v. Hyatt Corp., 862 F.3d 588, 595 (7th Cir. 2017); Teamsters Local 177 v. United Parcel Service, 966 F.3d 245 (3d Cir. 2020).

One of these cases, Teamsters Local 177, 966 F.3d 245, in fact supports Petitioner's argument.  In Teamsters, a labor union sought confirmation of an equitable award obtained against the defendant UPS, with which UPS had agreed to comply.  Id. at 249.  UPS argued that the court lacked jurisdiction over the confirmation proceeding because no case or controversy existed.  Id. at 250.  The Third Circuit rejected UPS's argument, relying on the strict, mandatory nature of confirmation proceedings under Section 9 of the FAA to find that "[u]nder the FAA a party's injuries are only fully remedied by the entry of a confirmation order."  Id. at 251.  The Third Circuit also noted that "The Supreme Court tells us that § 9 'carries no hint of flexibility.  There is nothing malleable about 'must

grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." Id. at 252 (quoting Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 587 (2008) (itself quoting § 9)).

The Third Circuit determined that it "agree[d] with the Second Circuit that 'the confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" Id. at 252 (citing and quoting Florasynth, 750 F.2d at 176) and noted that "the Second Circuit has long held that district courts have jurisdiction to confirm arbitration awards even in the absence of a new dispute about them." Id. at 252 (citing Florasynth, 750 F.2d at 176 and Zeiler, 500 F.3d at 169).

Thus, the Teamsters court determined that "like the Second Circuit, we view the confirmation of an arbitration award as the final step in arbitration proceedings under the FAA where there is no dispute about the validity or accuracy of that award under § 10 or § 11. As a result, a party seeking to confirm an arbitration award continues to have a live stake in the proceeding, and thus it has standing to seek confirmation." Id. at 253.

Contrary to IBM's argument, the Third Circuit did not even address the existence of jurisdiction where, as here, a party seeks to confirm an award for money damages that has been paid. See id. at 253 n.3 ("We limit our holding to an award for equitable relief and express no opinion as to whether a party that

receives an arbitration award for money damages has standing to confirm the award in federal court after those damages are paid in full.").  Yet nothing about the court's rationale as to the mandatory nature of confirmation was dependent on the fact that the award at issue in the case was equitable, and nothing in the strict language of Section 9 suggests that it is limited to equitable awards.

The other cases IBM cites, <u>Brown & Pipkins</u>, 846 F.3d 716, and <u>Unite Here</u>, 862 F.3d 588, merit little discussion, as, like <u>Teamsters</u>, neither actually addressed circumstances in which a federal court would not have jurisdiction over confirmation of a monetary award that had been complied with.  Rather, in <u>Brown & Pipkins</u>, 846 F.3d at 729 n.2, the Fourth Circuit expressly noted that it did "not reach the question of whether a federal court may confirm a labor arbitration award where there is no live controversy between the parties regarding the award necessitating judicial enforcement."  Similarly, in <u>Unite Here</u>, 862 F.3d at 599-60, the Seventh Circuit held that there *was* a live case or controversy where the defendant-employer did not challenge monetary award but had not yet complied; the court did not speak one way or the other to the issue of whether there would have been a live case or controversy if the award had been paid.

Moreover, none of these cases are analogous to the circumstances here, in which there is a genuine public interest in the award being made public.  Hundreds of other employees are pursuing similar age discrimination claims against IBM in

arbitration, all of whom could benefit from the award becoming public. These claims have received significant press attention.[9]  As noted *infra* note 11, the New York Times Company filed an amicus brief arguing that sealed documents in a similar case should be immediately unsealed.  See Lohnn v. International Business Machines Corp., No. 22-23, Amicus Brief, Dkt. 58 (2d Cir. Jan. 28, 2022).

### B. The District Court Had Diversity Jurisdiction

IBM contends that, following the Supreme Court's ruling in Badgerow, the District Court lacked statutory subject matter jurisdiction over Petitioner's case. While IBM is correct that Badgerow held that Section 9 of the FAA does not create independent federal question jurisdiction over a petition to confirm an arbitration award, IBM is incorrect that the District Court lacked diversity jurisdiction simply because the award had been paid.

The parties are diverse, as Petitioner is a citizen of Connecticut, while IBM is headquartered in New York.  JA22.  See 28 U.S.C. § 1332(a)(1).  It is well settled that in an action for injunctive or declaratory relief "the amount in controversy is measured by the value of the object of the litigation." Hunt v.

---

[9]     See, e.g., Noam Scheiber, *Making 'Dinobabies' Extinct: IBM's Push for a Younger Workforce*, NEW YORK TIMES, February 14, 2022, available at https://www.nytimes.com/2022/02/12/business/economy/ibm-age-discrimination.html; Amiah Taylor, *IBM execs referred to older employees as 'dinobabies' and a 'dated maternal workforce,' according to explosive court docs*, Fortune, February 14, 2022, available at https://fortune.com/2022/02/14/ibm-dinobabies-court-documents/.

Washington State Apple Advertising Comm'n, 432 U.S. 333, 347 (1977). To determine amount in controversy, the Second Circuit assesses "the value of the action's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." Kheel v. Port of N.Y. Auth., 457 F.2d 46, 49 (2d Cir. 1972) (internal quotation marks omitted); see also Beacon Const. Co. v. Matco Elec. Co., 521 F.2d 392, 399 (2d Cir. 1975) ("the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation"). When amount in controversy is contested, "courts should dismiss only when it is clear to a legal certainty that jurisdictional amounts cannot be met." Moore v. Betit, 511 F.2d 1004, 1006 (2d Cir. 1975).

In cases involving requests for confirmation of arbitration awards, this Circuit and others have used what is known as the "demand" approach, which "uses the amount that was denoted in the underlying proceedings to determine the amount in controversy in subsequent confirmation litigation." National Casualty Co. v. Resolute Reinsurance Co., 2016 WL 1178779, at *2 (S.D.N.Y. March 24, 2016). See, e.g., Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C., 565 F.3d at 64 (finding "no question that the amount-in-controversy requirement is satisfied" in arbitration confirmation litigation where plaintiff sought to obtain a share of $2.75 million fee and was awarded more than $94,000); see also Karsner

v. Lothian, 532 F.3d 876, 883 (D.C. Cir. 2008) ("Lothian sought $104,638.00 plus punitive damages, fees and costs in arbitration, the $75,000–plus threshold for diversity jurisdiction is met."); Theis Research, Inc. v. Brown & Bain, 400 F.3d 659, 663-64 (9th Cir. 2005) (using the demand approach to uphold the district court's jurisdiction to confirm a $0 arbitration award); Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 328-29 (1st Cir. 2000) (finding diversity jurisdiction existed where the petitioner sought vacatur of a $0 arbitration award and a new arbitration hearing at which he would demand $2,000,000). "In essence, the demand approach 'permits the district court to exercise jurisdiction coextensive with the diversity jurisdiction that would have otherwise been present if the case had been litigated rather than arbitrated.'" National Casualty Co., 2016 WL 1178779, at *2 (quoting Karsner, 532 F.3d at 884).

███████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████ Thus, the amount-in-controversy requirement for diversity jurisdiction was indisputably more than satisfied.

Moreover, there is no question that IBM's interest in maintaining the confidentiality of this arbitration has value above $75,000. Should future plaintiffs have access to the details of the arbitration, they would likely find support for their own claims against IBM under the ADEA. 29 U.S.C. §§ 621 et seq. The ADEA allows recovery of backpay, front pay, and attorney fees, which would surely amount to more than $75,000. In calculating amount in controversy, courts have considered the value of information being kept confidential. See Union Pac. R. Co. v. Mower, 219 F.3d 1069, 1071 (9th Cir. 2000) (value of protecting "confidential information from disclosure far exceeded the requisite jurisdictional amount."); see also Mortgageit Inc. v. Wallberg, 2002 WL 31324135, at *1 (S.D.N.Y. Oct. 16, 2002) ("it is also appropriate to consider the loss to the Defendant that would result if the injunction was granted"); see also Steinberg v. Nationwide Mut. Ins. Co., 91 F. Supp. 2d 540, 544 (E.D.N.Y. 2000) (finding diversity jurisdiction because "imposition of an injunction would cause economic harm in excess of $75,000 to the defendant"); Katz v. Warner-Lambert Co., 9 F. Supp. 2d 363, 365 (S.D.N.Y. 1998) (considering cost to defendant in calculating amount in controversy).

In short, IBM's argument that the Supreme Court's decision in <u>Badgerow</u> divested the District Court of subject matter jurisdiction fails, as the District Court always had diversity jurisdiction over the case.[10]

## II.    The District Court Correctly Ordered the Award Unsealed

As Judge Liman noted in <u>Lohnn</u>, "[t]he Supreme Court and Second Circuit have long held that there is a presumption of immediate public access to judicial documents under both the common law and the First Amendment." 2022 WL 36420 at *6 (citing <u>Lugosch v. Pyramid Co. of Onondaga</u>, 435 F.3d 110, 126 (2d Cir. 2006)). [11]    This right of public access, which "is said to predate the

---

[10]    Should the Court determine that, following <u>Badgerow</u>, the Court did not have diversity jurisdiction, then given that this argument was not even raised before the District Court, this Court should remand with instructions that Petitioner has leave to amend her Petition to add a claim under the First Amendment. Such a claim would undoubtedly confer federal subject matter jurisdiction.

[11]    The plaintiff in <u>Lohnn</u> brought a declaratory judgment claim to challenge the enforceability of the confidentiality provision in IBM's arbitration agreement. <u>See</u> <u>Lohnn</u>, 2022 WL 36420, at *1. After the plaintiff in <u>Lohnn</u> filed a motion for summary judgment, the <u>Lohnn</u> court directed briefing on whether the allegedly confidential material in the summary judgment record and briefing should remain under seal. <u>See</u> <u>id</u>. IBM argued that the <u>Lohnn</u> plaintiff's decision to include the summary judgment record was a "ruse" to make public information that would otherwise be subject to the confidentiality provision. <u>See</u> <u>id</u>. at *12. The court in <u>Lohnn</u> rejected that argument, explaining that the plaintiff submitted a record as necessary to make out her claim. <u>See</u> <u>id</u>. Moreover, the court in <u>Lohnn</u> held that these documents were judicial documents subject to the presumption of public access and that they must be unsealed, subject to limited redactions. <u>See</u> <u>id</u>. at *17-18.

IBM then sought an emergency stay from this Court of the district court's order to unseal documents virtually identical as those in this case. This Court

Constitution," <u>United States v. Amodeo</u>, 44 F.3d 141, 145 (2d Cir. 1995)

("<u>Amodeo I</u>"), is "based on the need for federal courts … to have a measure of

accountability and for the public to have confidence in the administration of

justice," <u>Lugosch</u>, 435 F.3d at 119) (citing <u>U.S. v. Amodeo</u>, 71 F.3d 1044, 1048

(2d Cir. 1995) ("<u>Amodeo II</u>")).

This Court has developed a three-part framework to determine whether a

document should be placed or remain under seal—and thereby protect the public's

First Amendment right to access court filings.  First, a court must determine

whether the documents are "judicial documents," defined as "a filed item that is

'relevant to the performance of the judicial function and useful in the judicial

process.'"  <u>Bernstein v. Bernstein Litowitz Berger & Grossmann LLP</u>, 814 F.3d

132, 139 (2d Cir. 2016) (quoting <u>Lugosch</u>, 435 F.3d at 119).

Once the court makes this determination, it "must determine the weight" of

the presumption in favor of public access, which is in turn "governed by the role of

---

declined to stay the district court's order.  <u>See Lohnn v. International Business</u>
<u>Machines Corp.</u>, No. 22-32, Order, Dkt. 71 (2d Cir. Feb. 8, 2022).  IBM then
petitioned for a rehearing *en banc*, which this Court also denied.  <u>See Lohnn</u>,
Order, Dkt. 90 (2d Cir. Feb. 16, 2022). While several filings were largely unsealed,
the exhibits forming the record were never unsealed, because the parties settled the
case prior to the district court's approval of the parties' proposed limited
redactions.  <u>See Lohnn v. International Business Machines Corp.</u>, 2022 WL
3359737, at *2-6 (S.D.N.Y. Aug. 15, 2022). Notably, the <u>New York Times</u>
Company filed an amicus brief arguing that the sealed documents should be
immediately unsealed.  <u>See Lohnn v. International Business Machines Corp.</u>, No.
22-23, Amicus Brief, Dkt. 58 (2d. Cir. Jan. 28, 2022).

the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Lugosch, 435 F.3d at 119 (quoting Amodeo II, 71 F.3d at 1049).

Finally, the court must weigh the public's right to access against "countervailing factors," including "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." Lugosch, 435 F.3d at 120 (quoting Amodeo II, 71 F.3d at 1050).

### A. The Arbitration Award is a Judicial Document That is Subject to a Strong Presumption of Public Access

In order to constitute a judicial document subject to the presumption of public access, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." Amodeo II, 44 F.3d at 145. "[I]t is well settled [] that the petition, memoranda, and other supporting documents filed in connection with a petition to confirm an arbitration award (including the Final Award itself) are judicial documents that directly affect the Court's adjudication of that petition." Clearwater Ins. Co., 2015 WL 500184, at *3 (collecting cases); see also Redeemer Committee of Highland Credit Strategies Funds v. Highland Capital Management, L.P., 182 F. Supp. 3d 128, 133 (S.D.N.Y. 2016) ("This weighty interest in public access applies with full force to documents filed in connection with a motion to confirm an arbitration award, as in the instant case."); Robert Bosch GmbH, 2015 WL 128154,

23

at *1 ("A party to an arbitration proceeding that is subject to confirmation proceedings in a federal court cannot have a legitimate expectation of privacy in all papers pertaining to the arbitration because the party should know of the presumption of public access to judicial proceedings."); <u>Global Reinsurance Corp.–U.S. Branch</u>, 2008 WL 1805459, at *2 ("In circumstances where an arbitration award is confirmed, the public in the usual case has a right to know what the Court has done."); <u>Veleron Holding, B.V. v. Stanley</u>, 2014 WL 1569610, at *1 (S.D.N.Y. April 16, 2014) (noting that if an arbitration award were confirmed, that "would, at least in this country, expose it to the public.").

In its brief, IBM contends that the arbitration award is not a judicial document because, in light of the mandatory requirement for the court to confirm the award, the contents of the award were not relevant to the District Court's decision to confirm. But even if a court does not assess the *content* of an arbitration award in the summary proceeding to confirm it, the award is still "at the heart of what the Court is asked to act upon," thus the "parties must demonstrate why the presumption of access should be overcome." <u>Global Reinsurance Corp.-U.S. Branch</u>, 2008 WL 1805459, at *2.

Courts have found an arbitration award in a confirmation proceeding to be a "judicial document" subject to a strong presumption of public access *even when*, as here, the petition to confirm the award was not contested. <u>See, e.g.</u>, <u>DXC Tech.</u>

Co. v. Hewlett Packard Enter. Co., 2019 WL 4621938, at *2 (S.D.N.Y. Sept. 11, 2019) ("[T]he Court must reject the parties' repeated characterization of this proceeding as "merely" one to confirm an arbitration award. A 'claim has been leveled,' 'state power has been invoked,' and 'public resources [have been] spent' because Petitioner elected to file the petition and the documents appended to it. That voluntary act has triggered a profound presumption of public access that cannot easily be overcome.") (quoting Bernstein, 814 F.3d at 141); Robert Bosch GmbH, 2015 WL 128154 *1 (finding that the arbitration award is a judicial document and noting that "even in the absence of an appearance by a respondent, the district court is required to consider the underlying agreement to arbitrate and the arbitration award in determining whether it should be confirmed."); Clearwater Ins. Co., 2015 WL 500184 *2 (requiring the parties to "overcome the strong presumption of public access to judicial documents" even though the plaintiff's petition to confirm the arbitration award was unopposed).

Here, the District Court did not simply rubber-stamp Petitioner's request for confirmation, but rather it engaged in an independent analysis as to whether confirmation was appropriate. See JA66-67 ("Courts in this District are clear that even where the petition is unopposed, a court must still treat he petition as akin to a motion for summary judgment.") (citing Church Ins. Co. v. Ace Prop. & Cas. Ins. Co., 2010 WIL 3958791, at *2 (S.D.N.Y. Sept. 23, 2010)). Moreover, this Court

has held that a document does not lose its character as a "judicial document" merely because a court does not heavily rely on the document in rendering its decision on a motion.  See Brown v. Maxwell, 929 F. 3d 41, 48 (2d. Cir. 2019) ("In fact, we have expressly rejected the proposition that 'different types of documents might receive different weights of presumption based on the extent to which they were relied upon in resolving [a] motion'"), quoting Lugosch, 435 F.3d at 123.  In other words, the public's right of access attached the moment that Petitioner filed her petition in court.  See Lohnn, 2022 WL 36420 at *9 ("[The public's] rights of access attached upon filing."); Lugosch, 435 F.3d 123 ("As a matter of law, … documents—by virtue of having been submitted to the court as supporting material in connection with a motion for summary judgment—are unquestionably judicial documents under the common law."); Brown, 929 F.3d at 47 ("[I]t is well-settled that 'documents *submitted* to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment.'") (internal citation omitted); Susquehanna Int'l Grp. Ltd. v. Hibernia Express (Ireland) Ltd., 2021 WL 3540221, at *2 (S.D.N.Y. Aug. 11, 2021) ("Once

[a document is] filed on the docket, the presumption of access attaches … and does

not disappear.") (internal citation omitted).[12]

Thus, there can be no question that, as the District Court properly concluded,

the award is a judicial document.

## B. There Are No Countervailing Interests Militating Against Public Access

The District Court likewise correctly determined that IBM did not

demonstrate a sufficient countervailing interest to "overcome the strong

presumption of public access to judicial documents and, in particular, adjudication

of substantive rights." JA68 (quoting Clearwater, 2015 WL 500194, at *3).

### 1. The Existence of a Confidentiality Provision in the Arbitration Agreement Does Not Override the Presumption of Public Access

Within this Circuit, cognizable countervailing interests include "the danger

of impairing law enforcement or judicial efficiency" and "the privacy interests of

---

[12]     That right of access is, as a matter of law, unaffected by subsequent developments in the case. See Lohnn, 2022 WL 3359737, at *4 (rejecting argument that "plaintiffs' summary judgment papers were not judicial documents because the court resolved the case on IBM's motion to dismiss"); see also Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d at 140 (pleadings were judicial documents from moment of filing, and "[t]he fact that the suit is ultimately settled without a judgment on the merits does not impair the 'judicial record' status of pleadings"); Dawson v. Merck & Co., 2021 WL 242148, at *6 (E.D.N.Y. Jan. 24, 2021) (documents attached to Daubert motion were "judicial documents to which a presumption of public access immediately attached and remain[ed] attached notwithstanding settlement by the parties.").

those resisting disclosure," <u>Amodeo II</u>, 71 F.3d at 1050, as well as "misuse of information for commercial gain, … violation of a deponent's constitutional rights … or a disclosure of trade secrets that would 'work a very clearly defined and very serious injury," <u>Burgess v. Town of Wallingford</u>, 2012 WL 4344194, at *12 (D. Conn. Sept. 21, 2012). By contrast, this Court has been crystal clear that a confidentiality provision like the one that IBM has invoked to justify continued sealing of the award is not a sufficient countervailing interest to override the presumption of public access. <u>See</u> <u>Lugosch</u>, 435 F.3d at 126 ("[T]he mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure was reasonable.").

Indeed, courts within the Circuit have routinely declined to keep documents under seal that were alleged to be confidential (whether in arbitration or elsewhere) and where they were filed as part of a proceeding raising a challenge to a party's confidentiality provision. <u>See, e.g.</u>, <u>Lohnn</u>, 2022 WL 36420 at *13 ("[N]either the fact that the arbitration are governed by a confidentiality provision nor the strong federal interest in favor of arbitration is sufficient in itself or together to support IBM's broad proposition that everything disclosed in the arbitration must be kept under seal… ."); <u>Susquehanna Int'l Grp. Ltd.</u>, 2021 WL 3540221, at *4 n.1 (rejecting argument that "presumption of public access is outweighed by the federal policy in favor of arbitration and interests of judicial efficiency" where "a

strong presumption of public access applies to the [documents] and the parties have not adequately demonstrated ... competitive harm absent sealing and have not narrowly tailored their sealing request."); Dentons US LLP v. Zhang, 2021 WL 2187289, at *1 (S.D.N.Y. May 28, 2021) ("Here, Petitioner contends that sealing is appropriate because the parties agreed to file under seal any papers associated with an arbitration proceeding. Confidentiality agreements alone are not an adequate basis for sealing, however.") (citing cases); Salerno v. Credit One Bank, N.A., 2020 WL 1558153, at *8 (W.D.N.Y. Mar. 31, 2020) (same) (citing Century Indem. Co. v. AXA Belgium, 2012 WL 4354816, at *13 (S.D.N.Y. Sept. 24, 2012)); In re Gen. Motors LLC Ignition Switch Litig., 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015) (the fact that information is subject to a confidentiality agreement between litigants is not, by itself, a valid basis to overcome the presumption in favor of public access to judicial documents); Utica Mutual Insurance Co. v. R&Q Insurance Co. f/k/a INA Reinsurance Co., 2015 WL 13639179, at *2-3 (N.D.N.Y Dec. 10, 2015) (same); First State Ins. Co. v. National Cas. Co., 2013 WL 8675930, at *1 (S.D.N.Y. Feb. 19, 2013) (same).

Consequently, the confidentiality provision should not insulate the award from public disclosure, particularly given that the agreement itself recognizes that

the proceedings will not necessary remain confidential if arbitration documents are filed in court.[13]

### 2. The FAA Does Not Override the Presumption of Public Access

IBM contends that the FAA itself evinces a "rigorous policy in favor of confidential arbitration," IBM Brief at 39, which would be rendered meaningless if parties to confidential arbitration proceedings could use confirmation proceedings to escape the confidential nature of the arbitration.

Yet the FAA favors only the enforcement of a valid agreement to arbitrate, it does not *favor* any particular terms, including confidentiality, that may be included in a particular arbitration agreement. See, e.g., Volt Information Sciences, Inc. v.

---

[13]     On appeal, IBM appears to have abandoned its argument below that unsealing the award could cause it competitive harm or reveal confidential employee information. As the District Court correctly recognized, such arguments are meritless (particularly as Petitioner did not oppose redaction of the names of uninvolved employees whose performance evaluations were at issue). See, e.g., Cohen v. Gerson Lehrman Group, Inc., 2011 WL 4336679 *3 (S.D.N.Y. Sept. 15, 2011) (recognizing that the defendant "may have some proprietary interest in not revealing its revenues accrued" through a certain initiative, but declining to find that interest outweighs the presumption of public access); In re Document Technologies Litigation, 282 F. Supp. 3d. at 748-49 ("In their briefs, plaintiffs argue that [the information at issue] could be used by 'savvy competitors' to adjust its 'business plans and gain a commercial advantage over DTI in the marketplace.' . . . This assertion is both hypothetical and conclusory. Plaintiffs nowhere explain how this high-level information could be used by a competitor to gain a commercial advantage. Nor do plaintiffs explain the potential magnitude of the harm. As plaintiffs do not marshal the sort of specific evidence that is required to overcome the presumption of public access, the Court cannot grant plaintiffs' motion to redact these references.").

<u>Board of Trustees of Leland Stanford Jr. Univ.</u>, 489 U.S. 468, 478 (1989)

(describing "FAA's primary purpose of ensuring that private agreements to

arbitrate are enforced according to their terms.").

As Judge McMahon recently noted in a well-reasoned decision rejecting a

party's argument that unsealing a confidential award would violate the pro-

confidentiality policy of the FAA (the same argument IBM makes here):

> If the prevailing party in arbitration feels compelled to reduce its
> award to a judgment, its opponent should understand that the
> proceedings will no longer be secret, no matter what the parties have
> agreed.  Contrary to Novartis' argument, this does not undercut the
> federal policy favoring arbitration, because the federal policy
> favoring arbitration favors only resort to alternative dispute
> resolution – not confidentiality agreements attendant thereto.  **There
> is no "FAA exception" to the public's right of access to judicial
> documents**, whether that right arises under First Amendment or is
> "firmly rooted" in the common law.   Any argument to the contrary
> is utterly unpersuasive — which may explain why Novartis cites not
> a single authority in support thereof.

<u>Bristol-Myers Squibb Co. v. Novartis Pharma AG</u>, 2022 WL 2133826, at *4

(S.D.N.Y. June 14, 2022), <u>reconsideration denied,</u> 2022 WL 2274354 (S.D.N.Y.

June 23, 2022) (emphasis added).  As noted above, numerous courts have unsealed

arbitration awards when the arbitration was conducted pursuant to a confidentiality

provision.  <u>See</u> cases cited *supra* at pp. 28-29.[14]

---

[14]    IBM cites <u>Guyden v. Aetna, Inc.</u>, 544 F.3d 376, 384-85 (2d Cir. 2008), to
suggest that confidentiality is a critical part of arbitration.  But IBM takes <u>Guyden</u>
too far – all <u>Guyden</u> stands for is the proposition that, without a well-developed
record showing how a confidentiality provision is being used to impede parties'

# CONCLUSION

For the foregoing reasons, the Court should affirm the District Court's decision below and order that the arbitration award be unsealed.[15]

Dated: January 9, 2023        Respectfully submitted,

ELIZABETH STAFFORD,
Petitioner-Appellee,

By her attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan
Thomas Fowler
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800
sliss@llrlaw.com
tfowler@llrlaw.com

---

ability to pursue claims in arbitration, the mere inclusion of a confidentiality provision in an arbitration agreement does not in itself make the agreement substantively unconscionable. Id. at 384-87. Here, Petitioner is not advancing an argument that the confidentiality provision is unenforceable, but rather only that its existence does not outweigh the strong presumption in favor of public access to judicial documents.

[15] As discussed *supra* at note 10, if the Court concludes that the Badgerow decision deprives the court of jurisdiction, Petitioner requests that the Court remand the case to the District Court in order to allow Petitioner to amend to add a claim under the First Amendment.

# CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 7878 words, as determined by the word-count function of Microsoft Word 2016.

Dated: January 9, 2022

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2023, an electronic copy of the foregoing was filed with the Clerk of the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished on them via the appellate CM/ECF system.


Dated: January 9, 2023

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan