# 22-1240

## United States Court of Appeals for the Second Circuit

ELIZABETH STAFFORD,

*Petitioner-Appellee,*

– v. –

INTERNATIONAL BUSINESS MACHINES CORP.,

*Respondent-Appellant.*

On Appeal from the United States District Court for the
Southern District of New York
No. 21-CV-06164 – Judge J. Paul Oetken

## RESPONDENT-APPELLANT INTERNATIONAL BUSINESS MACHINES CORP.'S REPLY BRIEF

Anthony J. Dick
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Telephone: (202) 879-3939
ajdick@jonesday.com

Matthew W. Lampe
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
mwlampe@jonesday.com

J. Benjamin Aguiñaga
JONES DAY
2727 N. Harwood St., Ste. 500
Dallas, TX 75201
Telephone: (214) 220-3939
jbaguinaga@jonesday.com

*Counsel for Respondent-Appellant IBM*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..........................................................................ii

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................... 3

I.   The District Court Lacked Subject-Matter Jurisdiction ................... 3

    A.   There Is No Article III Case or Controversy ............................. 3

    B.   There Is No Diversity Jurisdiction ........................................... 15

    C.   The Court Should Reject Stafford's Request for Leave to Add a First Amendment Claim .................................. 19

II.   This Court Should Reverse The Unsealing Order ......................... 20

    A.   The Final Award Is Not a Judicial Document Subject to the Presumption of Public Access ........................... 21

    B.   Even If the Final Award Were a Judicial Document, the Presumption of Public Access Would be Weak and Easily Overcome ................................................................ 26

CONCLUSION ........................................................................................ 31

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Am. Nursing Home v. Loc. 144 Hotel, Hosp., Nursing Home & Allied Servs. Union, SEIU, AFL-CIO,*
No. 89 Civ. 1704, 1992 WL 47553
(S.D.N.Y. Mar. 4, 1992)........................................................ 10

*Arbordale Hedge Invs., Inc. v. Clinton Grp., Inc.,*
No. 99 CIV. 4452, 1999 WL 1000939
(S.D.N.Y. Nov. 4, 1999) ........................................................ 10

*Badgerow v. Walters,*
142 S. Ct. 1310 (2022)...................................... 7, 16, 17, 18

*Bristol-Myers Squibb Co. v. Novartis Pharma AG,*
No. 22-cv-4162, 2022 WL 2133826
(S.D.N.Y. June 14, 2022) ............................................. 29, 30

*Brown & Pipkins, LLC v. Serv. Emps. Int'l Union,*
846 F.3d 716 (4th Cir. 2017)....................................... 11, 12

*Brown v. Maxwell,*
929 F.3d 41 (2d Cir. 2019) .................................... 21, 23, 24

*Campbell-Ewald Co. v. Gomez,*
577 U.S. 153 (2016)............................................... 3, 5, 6, 14

*City of N.Y. v. Mickalis Pawn Shop, LLC,*
645 F.3d 114 (2d Cir. 2011) ................................................. 7

*Conmed Corp. v. First Choice Prosthetic & Orthopedic Serv., Inc.,*
No. 21-cv-1245, 2023 WL 157957
(N.D.N.Y. Jan. 11, 2023)..................................................... 16

*Correspondent Servs. Corp. v. First Equities Corp. of Fla.,*
442 F.3d 767 (2d Cir. 2006) .......................................... 18, 19

*DiMartile v. Cuomo,*
834 F. App'x 677 (2d Cir. 2021) ......................................... 7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Dimich v. Med-Pro, Inc.*,
  304 F. Supp. 2d 517 (S.D.N.Y. 2004)...................................................18

*Dist. Council No. 9 v. APC Painting, Inc.*,
  272 F. Supp. 2d 229 (S.D.N.Y. 2003)..................................................10

*Doscher v. Sea Port Grp. Sec., LLC*,
  832 F.3d 372 (2d Cir. 2016) ...............................................................18

*Dyrdal v. Enbridge (U.S.), Inc.*,
  738 F. Supp. 2d 927 (D. Minn. 2010) ................................................17

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018).........................................................................30

*Erdheim v. Harris*,
  No. 18 Civ. 8601, 2019 WL 3219385
  (S.D.N.Y. July 17, 2019) .....................................................................16

*Excelsior Cap. LLC v. Allen*,
  536 F. App'x 58 (2d Cir. 2013) ...........................................................15

*FDIC v. Four Star Holding Co.*,
  178 F.3d 97 (2d Cir. 1999) ....................................................................9

*Glob. Reinsurance Corp.-U.S. Branch v. Argonaut Ins. Co.*,
  Nos. 07 Civ. 8196, 07 Civ. 8350, 2008 WL 1805459
  (S.D.N.Y. Apr. 21, 2008) .....................................................................24

*Grae v. Corr. Corp. of Am.*,
  __ F.4th ___, 2023 WL 179767
  (6th Cir. Jan. 13, 2023) .......................................................................22

*Green v. Dep't of Educ. of City of N.Y.*,
  16 F.4th 1070 (2d Cir. 2021)...............................................................10

*Guyden v. Aetna, Inc.*,
  544 F.3d 376 (2d Cir. 2008) ..........................................................30, 31

*In Re: IBM Arb. Agreement Litig.*,
  No. 21-cv-6296, 2022 WL 3043220
  (S.D.N.Y. Aug. 2, 2022).........................................................25, 27, 28

## <u>TABLE OF AUTHORITIES</u>
### (continued)

**Page(s)**

*Indep. Party of Richmond Cnty. v. Graham*,
  413 F.3d 252 (2d Cir. 2005) ................................................................. 7

*Lewis v. Cont'l Bank Corp.*,
  494 U.S. 472 (1990) .......................................................................... 15

*Lohnn v. IBM*,
  No. 21-cv-6379, 2022 WL 3359737
  (S.D.N.Y. Aug. 15, 2022) ................................................................. 25

*Lohnn v. IBM*,
  No. 21-cv-6379, 2022 WL 36420
  (S.D.N.Y. Jan. 4, 2022) ........................................................ 25, 28, 29

*Lohnn v. IBM*,
  No. 22-32 (2d Cir. Feb. 8, 2022), ECF No. 71 .................................. 29

*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006) .................................................. 25, 26, 27

*Manhattan Cmty. Access Corp. v. Halleck*,
  139 S. Ct. 1921 (2019) ...................................................................... 20

*Mitchell v. Frattini*,
  No. 22-cv-2352, 2022 WL 17157027
  (S.D.N.Y. Nov. 22, 2022) .................................................................. 17

*Nat'l Cas. Co. v. Resolute Reinsurance Co.*,
  No. 15cv9440, 2016 WL 1178779
  (S.D.N.Y. Mar. 24, 2016) .......................................................... 5, 6, 16

*NLRB v. Constellium Rolled Prods. Ravenswood, LLC*,
  43 F.4th 395 (4th Cir. 2022) ............................................................ 4, 5

*Olson v. MLB*,
  29 F.4th 59 (2d Cir. 2022) ................................................................ 25

*P.R. Tel. Co. v. WorldNet Telecomms., LLC*,
  No. 21-mc-386, 2022 WL 255362
  (D.P.R. Jan. 27, 2022) ......................................................... 4, 5, 6, 13

iv

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Perpetual Secs., Inc. v. Tang*,
290 F.3d 132 (2d Cir. 2002) ................................................................ 8

*Simpson v. Peloton Interactive, Inc.*,
No. 20-cv-7630 (S.D.N.Y. July 2, 2021), ECF No. 25 ...................... 5, 6

*Teamsters Loc. 177 v. United Parcel Serv.*,
966 F.3d 245 (3d Cir. 2020) ........................................................... 13, 14

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ...................................................................... 4, 6

*Unite Here Loc. 1 v. Hyatt Corp.*,
862 F.3d 588 (7th Cir. 2017) ............................................................. 12

*United Food & Com. Workers Union, Loc. 919, AFL-CIO
v. CenterMark Props. Meriden Square, Inc.*,
30 F.3d 298 (2d Cir. 1994) ................................................................ 19

*United States v. Amodeo*,
44 F.3d 141 (2d Cir. 1995) ........................................................... 21, 23

*Wynn v. AC Rochester*,
273 F.3d 153 (2d Cir. 2001) (per curiam) .......................................... 8

*Zeiler v. Deitsch*,
500 F.3d 157 (2d Cir. 2007) ................................................ 8, 9, 10, 11

**STATUTES**

9 U.S.C. § 9 ............................................................................... *passim*

9 U.S.C. § 10 ....................................................................................... 23

28 U.S.C. § 1332 ........................................................................... 15, 16

# **INTRODUCTION**

The facts in this appeal are straightforward and undisputed. Stafford and IBM agreed to confidential arbitration of any claims under the Age Discrimination in Employment Act ("ADEA"). Stafford prevailed on an ADEA claim in arbitration. The confidential Final Award granted her monetary relief and nothing more. Even though there was never a question about IBM's voluntary compliance with the Final Award, Stafford filed this federal action to confirm the Final Award anyway—not to obtain any real relief on the award, but (by her own admission, JA37 & n.1) to force the disclosure of the award's confidential contents under the "public access" doctrine, thereby gutting the confidentiality provision in the arbitration agreement. And even though IBM had already fully paid and satisfied the award, the district court confirmed it anyway.

The Court should begin and end its opinion by vacating the district court's decision and remanding with instructions to dismiss for lack of jurisdiction. There is no Article III case or controversy over the confirmation of a purely monetary award that has already been fully paid and satisfied. A confirmation order could not provide any "effectual" relief because it could have no effect in the real world.

1

Stafford's lead argument in response is that she has a *statutory* right to confirmation under the Federal Arbitration Act ("FAA"). But it is hornbook law that a statute cannot create Article III jurisdiction where no party has a concrete stake in the outcome of the case. There also is no diversity jurisdiction for the same reason: The parties have no amount in controversy because IBM fully satisfied the Final Award. The seriousness of that defect is underscored by Stafford's request for leave to engineer federal-question jurisdiction by adding a new First Amendment claim against IBM—even though such a claim would be frivolous.

In all events, even if the district court had jurisdiction, the unsealing order cannot stand. The confidential contents of the Final Award are not subject to any presumption of public access because, in the circumstances here, they could not influence the court's confirmation decision. At best, any presumption of access would be weak (because the award's contents were irrelevant to the court's ruling) and easily overcome (due to the FAA's strong policy of upholding confidentiality provisions). That issue is critical not just for this case, but for confidential arbitrations everywhere: Confidentiality is meaningless if any party can force disclosure just by seeking confirmation and opposing sealing.

## ARGUMENT

## I.    The District Court Lacked Subject-Matter Jurisdiction.

The Court should vacate with instructions to dismiss for lack of jurisdiction. There is no dispute that IBM has fully satisfied the monetary award Stafford received. Indeed, there is no dispute about that award at all. Accordingly, there is no Article III case or controversy (because the district court could not grant effectual relief to Stafford), and there is no diversity jurisdiction (because there is no amount in controversy).

### A.    There Is No Article III Case or Controversy.

Stafford agrees that there is no Article III case or controversy "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." Stafford Br. 10 (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016)). But she fails to identify how the district court's confirmation of the Final Award could grant her any effectual relief.

**1.** Stafford's lead argument is that there must be an Article III case or controversy "because the FAA itself establishes an unfettered right to obtain confirmation." *Id.*; *id.* at 11 (a court "*must grant*" confirmation unless the award is vacated, modified, or corrected, 9 U.S.C. § 9).

IBM addressed this argument in its opening brief, however, and Stafford offers no meaningful response. Specifically, she has no answer to the rule that "Congress cannot extend the judicial power to matters that are neither cases nor controversies." IBM Br. 17 (quoting *NLRB v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 399 (4th Cir. 2022)); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (explaining that the Supreme Court has long "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right'"). Thus, as one court addressing this precise question explained, although "the FAA clearly states that a court 'must grant' a timely request for [confirmation of] an arbitration award," that language "does not supersede the 'irreducible constitutional minimum of [an Article III case or controversy].'" *P.R. Tel. Co. v. WorldNet Telecomms., LLC*, No. 21-mc-386, 2022 WL 255362 (D.P.R. Jan. 27, 2022), *appeal pending* No. 22-1127 (1st Cir.).

As a result, the mere fact that Congress mandated confirmation in the FAA (assuming certain conditions are met) cannot, on its own, create an Article III case or controversy. Instead, as Stafford says, she must

identify some "effectual relief" that a confirmation order could give her. Stafford Br. 10 (quoting *Campbell-Ewald Co.*, 577 U.S. at 161). That means Stafford must have an actual "concrete interest . . . in the outcome of the litigation." *Campbell-Ewald Co.*, 577 U.S. at 161. Yet she has no such interest "because [IBM] has fully complied with its obligations under the Final Award." *P.R. Tel. Co.*, 2022 WL 255362, at *2. Confirming the award would thus have no effect at all: Whether it is confirmed or not, "no money will change hands" and IBM "will have to take no new actions." *See Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th at 403–04 ("[J]udicial intervention cannot be justified when the court's decision would have no tangible effect on the state of the world.").

**2.** Ignoring *Puerto Rico Telephone Company*, Stafford instead cites two other district court decisions (at 2–3, 11–12) holding that "parties retain an undisputed right to § 9 confirmation whatever the nature of an award and the parties' degree of compliance with it." *Nat'l Cas. Co. v. Resolute Reinsurance Co.*, No. 15cv9440, 2016 WL 1178779, at *3 (S.D.N.Y. Mar. 24, 2016); Opinion and Order at 2–3, *Simpson v. Peloton Interactive, Inc.*, No. 20-cv-7630 (S.D.N.Y. July 2, 2021), ECF No. 25.

Only *National Casualty* (which *Simpson* relied on) offered reasons for that holding—and they are mistaken.

In particular, *National Casualty*—like Stafford—emphasized that the FAA "makes . . . confirmation mandatory." 2016 WL 1178779, at *3. IBM has never disputed that. But *National Casualty* went on to say (without citation) that, "until [the party] receives that confirmation[,] an ongoing case and controversy exists," "whatever the nature of an award and the parties' degree of compliance with it." *Id.* That is incorrect, and it contradicts the court's recognition that the FAA's "statutory language cannot override Article III's requirements." *Id.* Instead, as cases like *TransUnion* and *Puerto Rico Telephone Company* hold, Stafford must identify some concrete "effectual relief" that confirmation would provide wholly apart from the abstract statutory right to confirmation. Stafford Br. 10 (quoting *Campbell-Ewald Co.*, 577 U.S. at 161). If a purely monetary award has been fully paid, then confirmation provides no concrete benefit to the prevailing party.

*National Casualty* also suggested that the "quasi-appellate" nature of a confirmation proceeding supports the claim that Article III jurisdiction exists in a case like this. 2016 WL 1178779, at *3; *see also*

6

*City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (referring to a confirmation proceeding as "a unique, quasi-appellate proceeding"). That, too, is incorrect. The Supreme Court has made clear that confirmation actions must have "an independent jurisdictional basis." *Badgerow v. Walters*, 142 S. Ct. 1310, 1316 (2022). Thus, the fact that the underlying arbitration proceeding might have presented a live case or controversy does not mean that the same is true of a subsequent confirmation proceeding. If the arbitrator has fully resolved the controversy by issuing a monetary award, and one party has fully paid and satisfied the award, there is no longer any live dispute—and no concrete relief that a confirmation order could provide.

Even if a confirmation action could be treated like an "appeal," it is well-settled that a case may become moot for Article III purposes while an appeal is pending. *See, e.g.*, *Indep. Party of Richmond Cnty. v. Graham*, 413 F.3d 252, 257 (2d Cir. 2005) (dismissing appeal in the election context as moot because the election had occurred and thus the appeal "fails to present a live case or controversy as required for jurisdiction under Article III"); *DiMartile v. Cuomo*, 834 F. App'x 677, 678–79 (2d Cir. 2021) (summary order) (similar). The same mootness

principle would apply here: Once the award is paid, the parties have no concrete stake in it, and the question of whether it should be confirmed no longer presents a live case or controversy. Thus, treating a confirmation proceeding as "quasi-appellate" cannot insulate it from Article III's case-or-controversy requirement.

**3.** Stafford also claims that there must be an Article III case or controversy because the parties' arbitration agreement "recognized that confirmation could be sought in court." Stafford Br. 11; *id.* at 1, 8; *see* JA32. But parties "cannot confer subject matter jurisdiction [on federal courts] where the Constitution . . . ha[s] not." *Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001) (per curiam)). And that provision in the parties' agreement simply tracks the FAA's confirmation process, which is available where (unlike here) confirmation could impart some effectual relief—for example, if a party *fails to pay* a Final Award. *Infra* pp. 11–14.

**4.** Next, Stafford argues that this Court's decision in *Zeiler v. Deitsch*, 500 F.3d 157 (2d Cir. 2007), "does not require a 'live' dispute" in confirmation proceedings. Stafford Br. 12. But again, Stafford all but

8

ignores IBM's opening brief, which identified at least four independent reasons why *Zeiler* does not control the Article III question here. *See* IBM Br. 25–28 ((1) *Zeiler* did not address the Article III issue; (2) there was Article III jurisdiction in *Zeiler* because the arbitral orders at issue awarded prospective relief, not purely monetary relief; (3) *Zeiler* left open the possibility that there might be another sufficient reason why confirmation of a fully satisfied award is impermissible; and (4) *Zeiler*'s concern about complex factual disputes is irrelevant here).

Stafford offers only a few responses in defense of *Zeiler*'s claimed relevance here. *First*, in a footnote, she says that, even though *Zeiler* "did not directly address . . . Article III," "federal courts are under an independent obligation to examine their own jurisdiction." Stafford Br. 12 n.8 (quoting *FDIC v. Four Star Holding Co.*, 178 F.3d 97, 100 n.2 (2d Cir. 1999)). She thus appears to suggest that *Zeiler implicitly* decided the Article III question, even though no party raised it and the Court never discussed it. But, as IBM explained—and as the Supreme Court has emphasized—"'drive-by jurisdictional rulings' that simply assume jurisdiction without addressing it 'have no precedential effect' on the

9

question of Article III jurisdiction." IBM Br. 26 (quoting *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1076 n.1 (2d Cir. 2021)).

*Second*, Stafford says that "numerous courts [following *Zeiler*'s predecessors] have confirmed awards even where there was no dispute as to compliance with the award." Stafford Br. 12–13 (citing *Am. Nursing Home v. Loc. 144 Hotel, Hosp., Nursing Home & Allied Servs. Union, SEIU, AFL-CIO*, No. 89 Civ. 1704, 1992 WL 47553 (S.D.N.Y. Mar. 4, 1992); *Arbordale Hedge Invs., Inc. v. Clinton Grp., Inc.*, No. 99 CIV. 4452, 1999 WL 1000939 (S.D.N.Y. Nov. 4, 1999); *Dist. Council No. 9 v. APC Painting, Inc.*, 272 F. Supp. 2d 229 (S.D.N.Y. 2003)). Like *Zeiler*, however, none of Stafford's cases say a word about Article III.

*Finally*, Stafford cites a number of cases for the proposition that "courts in this Circuit have never limited" "*Zeiler*'s applicability to circumstances in which a party seeks to confirm a satisfied award providing for prospective, non-monetary relief, rather than money damages." Stafford Br. 13–14. Stafford misunderstands IBM's point: There was no Article III problem in *Zeiler* because confirmation in that case gave teeth to the arbitral award's grant of prospective relief by activating tools to enforce the award in the future, since future

10

compliance was not guaranteed. IBM Br. 26–27. That explains why the parties in *Zeiler* did not raise, and this Court did not address, Article III.

**5.** Stafford likewise attempts to minimize IBM's authorities from the Third, Fourth, and Seventh Circuits—to no avail. Stafford Br. 14–16.

*First*, she disparages them generally because "not one of the cases actually reaches [the] holding" that "jurisdiction exists only over confirmation of awards involving equitable relief." *Id.* at 14. IBM never suggested otherwise. And more fundamentally, that is not IBM's position. As IBM explained, a district court has Article III jurisdiction over a confirmation proceeding when confirmation may impart effectual relief to the prevailing party. IBM Br. 22–24. That is true in proceedings where an arbitral award is equitable and also where a monetary award is unsatisfied; in both contexts, the enforcement tools that confirmation gives the prevailing party are effectual relief. The Article III problem arises only where, as here, a purely monetary award has been fully paid. In this situation, confirmation would do nothing for Stafford.

*Second*, turning to each of IBM's cited cases specifically, Stafford struggles to distinguish them. In one sentence, she observes that, in *Brown & Pipkins, LLC v. Service Employees International Union*, 846

F.3d 716 (4th Cir. 2017), the Fourth Circuit "expressly noted that it did 'not reach the question of whether a federal court may confirm a labor arbitration award where there is no live controversy between the parties regarding the award necessitating judicial enforcement.'" Stafford Br. 16 (quoting *Brown & Pipkins*, 846 F.3d at 729 n.2). But she ignores that the Fourth Circuit found an Article III case or controversy *because* there was an ongoing dispute as to whether the monetary award was satisfied. *See* IBM Br. 18–19. The logical implication, therefore, is that no Article III case or controversy exists where, as here, the monetary award has been fully paid and there is no ongoing dispute about it.

In another sentence, Stafford says that, in *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588 (7th Cir. 2017), the Seventh Circuit "held that there *was* a live case or controversy where the defendant-employer did not challenge [the] monetary award but had not yet complied." Stafford Br. 16. Stafford misapprehends *Unite Here* because there was no monetary award. 862 F.3d at 594 ("The arbitration awards in this case . . . expressly granted prospective relief in the form of cease-and-desist orders."). In any event, Stafford does not acknowledge IBM's point— drawn from *Unite Here*—that there is no Article III case or controversy

here because the monetary award has been fully satisfied, and "there is no work for contempt sanctions or injunctive relief [which would flow from confirmation] to do." IBM Br. 19–20, 22.

Last, Stafford puzzlingly tries to spin the Third Circuit's decision in *Teamsters Local 177 v. United Parcel Service*, 966 F.3d 245 (3d Cir. 2020), as "support[ing]" her. Stafford Br. 14–16. She notes that the Third Circuit "limit[ed] [its] holding to an award for equitable relief and express[ed] no opinion as to whether a party that receives an arbitration award for money damages has standing to confirm the award in federal court after those damages are paid in full." *Id.* at 15–16 (quoting *Teamsters Loc. 177*, 966 F.3d at 253 n.3). But IBM emphasized that point in its opening brief because *it helps IBM*. IBM Br. 21–22. The Third Circuit expressly recognized that a case like this one may present a fatal Article III problem. And indeed, the court in *Puerto Rico Telephone Co.* received that message and found an Article III defect in a materially identical case. *Id.* at 22–24.

Stafford nonetheless tries to read the Third Circuit's footnote out of the opinion, arguing that "nothing about the court's rationale as to the mandatory nature of confirmation was dependent on the fact that the

award at issue in the case was equitable, and nothing in the strict language of Section 9 suggests that it is limited to equitable awards." Stafford Br. 16. But she conspicuously never acknowledges the Third Circuit's actual rationale, which was that confirmation provided a concrete benefit in that case because it enabled the petitioner to "enforce" the prospective relief granted in the arbitration award. *Teamsters Loc. 177*, 966 F.3d at 253. With a confirmation order, the court could "penalize the non-complying party through contempt proceedings or the issuance of injunctive relief." *Id*. That is not true in the present case because the award here was purely monetary and had already been fully paid.

**6.** Finally, Stafford suggests that there must be an Article III case or controversy here because (in her view) "there is a genuine public interest in [her] award being made public." Stafford Br. 16–17. That is not how Article III works. As Stafford herself recounts, there is no Article III case or controversy if "it is impossible for a court to grant any effectual relief whatever *to the prevailing party*"—not the public. *Id*. at 10 (emphasis added) (quoting *Campbell-Ewald Co.*, 577 U.S. at 161). Stafford prevailed in arbitration, IBM has fully satisfied her award,

and—as her silence as to what relief she might receive suggests—there is simply no effectual relief the district court could give her.

Moreover, to the extent Stafford suggests that the parties' ancillary sealing dispute suffices to create an Article III case or controversy, she is wrong. The Supreme Court and this Court have long held that ancillary issues—such as, for example, an interest in attorney's fees—cannot save a claim for purposes of Article III. *See, e.g.*, *Excelsior Cap. LLC v. Allen*, 536 F. App'x 58, 61 (2d Cir. 2013) ("[A]n 'interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'" (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990))). Similarly here, a party cannot file a complaint with confidential materials under seal and then bootstrap Article III standing by claiming that there is a case or controversy over the sealing issue—even though the underlying claim is moot.

## B.    There Is No Diversity Jurisdiction.

The district court lacked diversity jurisdiction under § 1332 for the same reasons: given that IBM paid the arbitral award in full, there is no amount in controversy. Again, Stafford offers no persuasive responses.

15

**1.** Stafford principally argues that diversity jurisdiction "indisputably" exists because the amount in controversy in the underlying arbitration proceedings satisfied § 1332's $75,000 requirement. Stafford Br. 19. For support, she claims that "this Circuit and others have used what is known as the 'demand' approach, which 'uses the amount that was denoted in the underlying proceedings to determine the amount in controversy in subsequent confirmation litigation.'" *Id.* at 18. Stafford is incorrect in two respects.

*First*, Stafford omits that—as numerous courts have recognized—this Court "has not decided" whether the "demand" approach is appropriate where parties seek to confirm, modify, or vacate arbitral awards. *See, e.g.*, *Erdheim v. Harris*, No. 18 Civ. 8601, 2019 WL 3219385, at *3 (S.D.N.Y. July 17, 2019); *Nat'l Cas. Co.*, 2016 WL 1178779, at *2 (stating that "[t]he Second Circuit has not set forth a rule governing how to calculate the amount in controversy in an arbitration confirmation proceeding where the award has already been paid"). On top of that, after *Badgerow*, multiple courts within this Circuit have rejected the "demand" approach because it is "similar to the 'look through' approach that the Supreme Court held impermissible in *Badgerow*." *Conmed Corp. v. First*

16

*Choice Prosthetic & Orthopedic Serv., Inc.*, No. 21-cv-1245, 2023 WL 157957, at *7 (N.D.N.Y. Jan. 11, 2023); *Mitchell v. Frattini*, No. 22-cv-2352, 2022 WL 17157027, at *3 (S.D.N.Y. Nov. 22, 2022) ("*Badgerow* forecloses" resting diversity jurisdiction on a "find[ing] that the underlying arbitration involved an amount-in-controversy greater than $75,000"). Indeed, *Badgerow* makes clear that a dispute over confirmation is quite distinct from the underlying dispute in arbitration.

*Second*, this case illustrates why the "demand" approach is flawed: It requires courts to rely on a "legal fiction" about the amount at stake at the beginning of arbitration, without regard to the nature of "the case *now* before the Court." *E.g.*, *Dyrdal v. Enbridge (U.S.), Inc.*, 738 F. Supp. 2d 927, 931 (D. Minn. 2010). After an award has been rendered and a party has agreed to fully pay it, it makes no sense to ignore the reality that there is no longer any amount in controversy. IBM's prompt satisfaction of the arbitral award—regardless of any amount Stafford demanded or received—eliminates any genuine controversy.[1]

---

[1] Stafford notes that IBM did not raise any issue about diversity jurisdiction below. Stafford Br. 3–4 n.4. This is irrelevant because she also concedes that "arguments as to the court's subject matter jurisdiction can be raised at any time." *Id.* at 2 n.2. Moreover, there was

**2.** In the alternative, Stafford tries to shift the focus to IBM, claiming that "there is no question that IBM's interest in maintaining the confidentiality of this arbitration has value above $75,000." Stafford Br. 20. But that ignores the rule that "the amount in controversy is calculated from the plaintiff's standpoint," not the defendant's. *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006); *see also Dimich v. Med-Pro, Inc.*, 304 F. Supp. 2d 517, 519 (S.D.N.Y. 2004) ("[T]he prevailing method of calculating value in this Circuit is the 'plaintiff's view' approach, where one calculates the value to the plaintiff, not the cost to the defendant.").

Stafford's argument also fails because it turns on the supposed value of the unsealing dispute, not the value of the confirmation order that is the object of the suit. Ancillary issues like sealing are not relevant to the amount in controversy for purposes of diversity jurisdiction. Simply put, "the amount in controversy is measured by the value of *the*

---

no need to address diversity below because, as IBM explained (at 29–30), this Court's pre-*Badgerow* decision in *Doscher v. Sea Port Group Securities, LLC*, 832 F.3d 372 (2d Cir. 2016), established clear statutory federal-question jurisdiction based on the look-through approach. That changed when the Supreme Court overruled *Doscher* in *Badgerow*.

*object* of the litigation." *Correspondent Servs. Corp.*, 442 F.3d at 769 (emphasis added)). And the object of a confirmation action is, by definition, confirmation of an arbitral award—not how a district court handles the ancillary issue of the sealing of various filings in the action.

Finally, Stafford's argument fails because it is purely speculative: It assumes with no basis that the disclosure of the Final Award would do more than $75,000 worth of damage to IBM because it (1) could "support" some other unspecified claimants in separate arbitrations against IBM, and (2) could result in those unspecified claimants recovering more than $75,000 in damages against IBM. Stafford Br. 4 n.5, 9, 20. Such "purely speculative" attempts to identify a monetary value "fail[] to establish to a reasonable probability that the amount in controversy exceeds the statutory minimum." *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 306 (2d Cir. 1994).

## C.    The Court Should Reject Stafford's Request for Leave to Add a First Amendment Claim.

Sensing the writing on the jurisdictional walls, Stafford repeatedly asks the Court, in the alternative, to "remand with instructions that Petitioner has leave to amend her Petition to add a claim under the First

Amendment." Stafford Br. 21 n.10, 32 n.15. She never explains what the claim would be, but she assures the Court that "[s]uch a claim would undoubtedly confer federal subject matter jurisdiction." *Id.* at 21 n.10.

The Court should ignore this request because it is frivolous. IBM is not a state actor to whom the First Amendment applies. *See, e.g.*, *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). Accordingly, any First Amendment claim against IBM would fail.

## II.  This Court Should Reverse The Unsealing Order.

The district court's unsealing order is mistaken and should be reversed. The confidential contents of the Final Award are not subject to any presumption of public access because they were by law irrelevant to the district court's decision on the petition to confirm. And that is true regardless of whether the district court had jurisdiction to issue the confirmation order: If the district court lacked jurisdiction, it was required to dismiss the petition for that reason alone. And even if the district court had jurisdiction, the FAA required confirmation of the award regardless of its contents because no party raised any ground for vacatur. In any event, even if a presumption of public access somehow applied here, it would be extraordinarily weak (because the award's

contents played no proper role in the judicial function) and easily overcome (given the FAA's strong policy in favor of confidential arbitration). Here, too, Stafford offers no persuasive responses.

### A. The Final Award Is Not a Judicial Document Subject to the Presumption of Public Access.

Stafford agrees at the outset that, "[i]n order to constitute a judicial document subject to the presumption of public access, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document.'" Stafford Br. 23 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")). She omits—and does not dispute—that this Court has also said that a document is relevant to the performance of the judicial function "if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019); *see also Amodeo I*, 44 F.3d at 146 (contents of documents are relevant to judicial function if they would have "informed" the court's decision). She offers a few arguments that the Final Award fits the bill, but all fail.

**1.** Stafford leads with lengthy string-cites of cases where district courts have said that arbitral awards filed with confirmation petitions are judicial documents subject to the presumption of public access. Stafford Br. 23–25. But none of those cases considered—let alone wrestled with—IBM's argument here: Since the district court lacked jurisdiction, it could not properly do anything other than dismiss the confirmation petition regardless of the contents of the award. Indeed, as the Sixth Circuit recently explained, courts do not even "possess the power to unseal documents outside a justiciable case or controversy." *Grae v. Corr. Corp. of Am.*, __ F.4th ___, 2023 WL 179767, at *4 (6th Cir. Jan. 13, 2023).

Even assuming the district court had jurisdiction, the contents of the Final Award were still irrelevant to the judicial function: Under the FAA, the court "was required to confirm the award regardless of its contents" because no party raised any ground for vacating the award. IBM Br. 35. This follows directly from the text of the FAA: A district court "must" confirm an award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9. And Sections

22

10 and 11 allow vacatur, modification, or correction only "upon the application of [a] party." *Id.* §§ 9–10.

Where, as here, no party raises any ground for vacatur, modification, or correction, the district court "must" confirm the award regardless of its contents. "The upshot is that the contents of the Final Award—by law—could not 'reasonably have [had] the tendency to influence a district court's ruling' on whether to confirm the award. IBM Br. 35–36 (quoting *Brown*, 929 F.3d at 49). Disclosing the contents of the award would thus do nothing to advance transparency about the court's decision-making process, which is the core purpose of the public access doctrine. *See* IBM Br. 31.

Stafford notes that, in some of her cited cases, district courts have considered arbitral awards to be judicial documents "*even when*, as here, the petition to confirm the award was not contested." Stafford Br. 24. But, again, none of those cases addressed IBM's point—rooted in *Brown* and *Amodeo I*—that the contents of an arbitral award in cases like this cannot reasonably have had a tendency to influence any judicial decision.

**2.** Stafford next gestures at IBM's argument but says that, "even if a court does not assess the *content* of an arbitration award in the

summary proceeding to confirm it, the award is still 'at the heart of what the Court is asked to act upon,' [and] thus the 'parties must demonstrate why the presumption of access should be overcome.'" *Id.* (quoting *Glob. Reinsurance Corp.-U.S. Branch v. Argonaut Ins. Co.*, Nos. 07 Civ. 8196, 07 Civ. 8350, 2008 WL 1805459, at *1 (S.D.N.Y. Apr. 21, 2008), as amended (Apr. 24, 2008)). But that ignores the jurisdictional argument altogether, and it also misstates this Court's test for whether materials are judicial documents: whether they "would reasonably have the tendency to *influence a district court's ruling* on a motion or in the exercise of its supervisory powers[.]" *Brown*, 929 F.3d at 49 (emphasis altered). Although the award is the object of the confirmation, its contents have no tendency to influence the judicial act of confirmation when no party opposes it and the contents are thus entirely irrelevant to how the Court rules. In this situation, the contents of the award have no influence on the district court's summary confirmation order and are not subject to any presumption of public access.

**3.** Stafford also emphasizes that "this Court has held that a document does not lose its character as a 'judicial document' merely because a court does not heavily rely on the document in rendering its

decision on a motion." Stafford Br. 25–26. IBM's argument, however, does not turn on how heavily the district court relied on the contents of the Final Award. As just explained, it turns instead on the fact that the contents of the award were legally irrelevant to the court's decision on how to rule on the confirmation petition.

**4.** Stafford likewise mischaracterizes the Court's precedents in arguing that "the public's right of access attached the moment [she] filed her petition in court." *Id.* at 26. To the contrary, the Court has repeatedly held that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006); *see Olson v. MLB*, 29 F.4th 59, 87 (2d Cir. 2022) (same). Instead, the document must meet the relevancy test discussed above to constitute a judicial document. Stafford is thus simply wrong to suggest that the filing itself subjected the contents of the Final Award to a presumption of public access. *Compare Lohnn v. IBM*, No. 21-cv-6379, 2022 WL 3359737 (S.D.N.Y. Aug. 15, 2022) (adopting Stafford's counsel's view), *with In Re: IBM Arb. Agreement Litig.*, No. 21-cv-6296, 2022 WL 3043220, at *3 (S.D.N.Y. Aug. 2, 2022) (explaining that the *Lohnn* court

25

misread *Lugosch*, which "explicitly reaffirmed" that the mere filing of a document is insufficient to make it a judicial document).

### B. Even If the Final Award Were a Judicial Document, the Presumption of Public Access Would be Weak and Easily Overcome.

Stafford fails to rebut IBM's argument that, even if there were a presumption of public access here, it would be overcome by the FAA's policy of protecting arbitral confidentiality provisions.

**1.** At the outset, Stafford omits the critical second step of the Court's *Lugosch* analysis, which IBM emphasized in its opening brief (at 38–39): Even when there is a presumption of public access, the Court must first determine the "weight" of that presumption before deciding whether it is outweighed by competing considerations. *Lugosch*, 435 F.3d at 119. The weight of the presumption is "governed by the role of the [contents of the Final Award] in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.*

This step in the analysis is dispositive (if the Court reaches it) because, for the reasons just explained, the contents of the Final Award could have "'no role'—not even 'a negligible role'—'in the performance of Article III functions.'" IBM Br. 39. Any presumption is thus virtually non-

existent, as publicly disclosing the confidential contents of the Final Award would have "no value to 'those monitoring the federal courts.'" *Id.* And as the district court in *In Re: IBM* determined in similar circumstances, the FAA's pro-arbitration policy (*see infra* at 27–31) is a "strong 'competing consideration[]'" that would easily overcome that "weak presumption." 2022 WL 3043220, at *2. Stafford does not say a word about this argument in response.

**3.** As to the final step of the *Lugosch* analysis—whether competing considerations override any de minimis presumption of public access to the Final Award—Stafford argues that "this Court has been crystal clear that a confidentiality provision like the one that IBM has invoked … is not a sufficient countervailing interest to override the presumption of public access." Stafford Br. 28 (citing *Lugosch*, 435 F.3d at 126).

But Stafford misrepresents *Lugosch*, which did not involve an arbitral confidentiality provision or the FAA. The Court in *Lugosch* acknowledged that "particular circumstances surrounding" a confidentiality order or agreement could outweigh a presumption of public access. *See* 435 F.3d at 126. The unique "particular circumstances" here—including the absence of any case or controversy, the fact that the

27

contents of the Final Award could not influence the district court's decision, and the FAA's mandate that courts rigorously uphold the terms of arbitration agreements—easily combine to displace any negligible presumption.

Stafford also cites a number of cases for the proposition that "courts within the Circuit have routinely declined to keep documents under seal that were alleged to be confidential (whether in arbitration or elsewhere) and where they were filed as part of a proceeding raising a challenge to a party's confidentiality provision." Stafford Br. 28–29, 32. Only two of her cited cases, however, confronted the FAA argument IBM presents here. Neither bind this Court, and respectfully, both were wrongly decided.

The first is *Lohnn*. As explained above, the district court in *In Re: IBM* expressly—and correctly—disagreed with the *Lohnn* court's reasoning regarding the public access doctrine. *See In Re: IBM*, 2022 WL 3043220, at *3. Moreover, as *Lohnn*'s silence on the Supreme Court's FAA case law suggests, the court mistakenly gave short shrift to the FAA's

pro-arbitration policy. *Lohnn v. IBM*, No. 21-cv-6379, 2022 WL 36420, at *13–14 (S.D.N.Y. Jan. 4, 2022).[2]

The second is *Bristol-Myers Squibb Co. v. Novartis Pharma AG*, No. 22-cv-4162, 2022 WL 2133826 (S.D.N.Y. June 14, 2022). The court in that case argued that "the weight of the presumption of public access [to an award] is strong" because "the award 'directly affects' the adjudication the court is being asked to make." *Id.* at *4. But, as explained above, on the facts of this case, where confirmation was not opposed, the contents of the Final Award legally *could not affect* the district court's confirmation order. *See supra* pp. 22–23. Disclosing the contents of the award thus does not serve the public-access doctrine's goal of enabling the public to evaluate the integrity of the court's decision-making process.

The court also concluded that requiring public disclosure of a confidential arbitration award "does not undercut the federal policy favoring arbitration, because the federal policy favoring arbitration favors only resort to alternative dispute resolution—not confidentiality

---

[2] Nor can Stafford get any mileage out of this Court's decision to deny a stay pending appeal in *Lohnn*. *See* Stafford Br. 21–22 & n.11 (citing Order, *Lohnn v. IBM*, No. 22-32 (2d Cir. Feb. 8, 2022), ECF No. 71). That summary denial did not resolve the merits of the unsealing issue.

agreements attendant thereto." *Bristol-Myers Squibb Co.*, 2022 WL 2133826, at *4; *see also* Stafford Br. 30 (similarly arguing that "the FAA favors only the enforcement of a valid agreement to arbitrate[;] it does not *favor* any particular terms, including confidentiality, that may be included in a particular arbitration agreement").

Respectfully, that is directly contrary to the Supreme Court's admonition that courts must "respect and enforce . . . '*the rules*'" that parties adopt for arbitration. *E.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). It is also directly contrary to this Court's admonition that "confidentiality is a paradigmatic aspect of arbitration," and an "'attack on [a] confidentiality provision is, in part, an attack on the character of arbitration itself.'" *Guyden v. Aetna, Inc.*, 544 F.3d 376, 385 (2d Cir. 2008). Because gutting the confidentiality of an arbitral award "is, in part, an attack on the character of arbitration itself," *id.*, it is simply incorrect to say that this "does not undercut the federal policy favoring arbitration," *Bristol-Myers Squibb Co.*, 2022 WL 2133826, at *4.

Stafford tries to escape *Guyden* on the ground that she "is not advancing an argument that the confidentiality provision is unenforceable." Stafford Br. 32 n.14. But that puts form over substance.

The undisputed practical consequence of her position is that arbitral confidentiality provisions are meaningless if any party may thereafter move to confirm (or vacate) the confidential award, file the award on the court docket, and thereby force its automatic public disclosure under the public access doctrine. That would make arbitral confidentiality a dead letter. And that is a broadside attack on "the character of arbitration itself." *Guyden*, 544 F.3d at 385. Avoiding that stunning consequence easily overcomes any weak presumption of public access to the Final Award that may exist in this case.

## **CONCLUSION**

IBM respectfully requests that the Court vacate the decision below and order the case dismissed for lack of jurisdiction or, in the alternative, reverse the district court's judgment insofar as it requires unsealing the contents of the Final Award.

Dated: January 30, 2023

Respectfully submitted,

*/s/ Matthew W. Lampe*

Anthony J. Dick
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Telephone: (202) 879-3939
ajdick@jonesday.com

Matthew W. Lampe
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
mwlampe@jonesday.com

J. Benjamin Aguiñaga
JONES DAY
2727 N. Harwood St., Ste. 500
Dallas, TX 75201
Telephone: (214) 220-3939
jbaguinaga@jonesday.com

*Counsel for Respondent-Appellant IBM*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook Standard font.

This brief complies with the type-volume limitation of Local Rule 32.1(a)(4)(A) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), it contains 6,420 words, as determined by the word-count function of Microsoft Word 2016.

Dated: January 30, 2023

*/s/ Matthew W. Lampe*
Matthew W. Lampe

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 30, 2023, an electronic copy of the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished on them via the appellate CM/ECF system.

Dated: January 30, 2023

*/s/ Matthew W. Lampe*
Matthew W. Lampe